## Ex parte LITTLE CAHABA COAL CO.

## ELLIS v. LITTLE CAHABA COAL CO.

(2 Div. 866.)

(Supreme Court of Alabama. April 16, 1925. Rehearing Denied May 28, 1925.)

**1. Master and servant ⟪405(4)—Finding death of miner, attempting to put out fire, was in course of employment sustained.**

Where miner, with general duty to aid in extinguishing fires in mine, attempted to go into return air course to close water valve, when use of water to extinguish fire had ceased, and was killed by an explosion, finding that death was in course of employment sustained under evidence, notwithstanding he may have been told not to go into air course.

**2. Master and servant ⟪403—Burden of proving compensable injury is on claimant.**

In proceeding, under Workmen's Compensation Law (Laws 1919, p. 208, § 9; Code 1923, § 7544), burden of proving that injury arose out of and in the course of employment, which is condition precedent in all cases, is on the claimant when put in issue by answer.

**3. Master and servant ⟪403—Burden of proving employee's willful misconduct is on employer.**

In proceeding under Workmen's Compensation Law, burden of proving willful misconduct in general, or as specified by statute, is on employer.

---

⟪For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

1 212 Ala. 435.

**4. Master and servant ⬅405(1)—Disobedience of miner going back into return air course of mine, while assisting putting out fire, held not willful misconduct under evidence.**

In compensation proceeding where miner, in attempting to assist in putting out fire in mine, went into return air course after being told not to by foreman, and was killed by explosion, finding that he was not guilty of willful misconduct *held* sustained under evidence.

**5. Master and servant ⬅386(1)—Award for more than 50 per centum of deceased's weekly earnings sustained.**

Award of compensation, under Acts 1919, p. 220, § 14, subd. 21 (Code 1923, § 7562), to widow and children in excess of 50 per centum of employee's weekly earnings, was proper, in view of section 13, subd. (h), being Code 1923, § 7551, fixing compensation in case of dependent minor children, and award need not be limited as under Acts 1919, p. 218, § 14, subd. 7 (Code of 1923, § 7554).

Certiorari to Circuit Court, Bibb County; Fleetwood Rice, Judge.

Petition of the Little Cahaba Coal Company for certiorari to the circuit court, Bibb county, to review the judgment and findings of that court in a proceeding by Myrtle Mary Lee Ellis against the petitioner, under the Workmen's Compensation Act. Writ denied; judgment affirmed.

David S. Anderson and Richard C. Gonzalez, both of Birmingham, and Jerome T. Fuller, of Centerville, for appellant.

Disobedience of orders took deceased without the line and scope of his employment. Ex parte Coleman, 211 Ala. 248, 100 So. 114; Ex parte Terry, 211 Ala. 418, 100 So. 768; Polo v. Majestic Co., 208 Ala. 86, 93 So. 732; Fournier v. Androscoggin Mills, 120 Me. 236, 113 A. 270, 23 A. L. R. 1156; Lobuzek v. Amer. C. & F. Co., 194 Mich. 533, 161 N. W. 139; Schelf v. Kishpaugh, 37 N. J. Law 173; Yodakis v. Alex. Smith Carpet Co., 193 App. Div. 150, 183 N. Y. S. 768; Id., 230 N. Y. 593, 130 N. E. 907; Nelson Const. Co. v. Industrial Board, 286 Ill. 632, 122 N. E. 113. Deceased was guilty of willful misconduct, the proximate cause of his injury. Code 1923, § 7544; Acts 1919, p. 208, § 9; Ex parte Woodward Iron Co., 212 Ala. 220, 102 So. 103; 2 Labatt, Mast. & Serv. 2138. The award was excessive. Code 1923, § 7554; Acts 1919, p. 218, § 14 (7). The court will look to the bill of exceptions to determine whether the finding of the trial judge is supported by any legal evidence, or contrary to the undisputed evidence. Greek v. Sloss Co., 207 Ala. 219, 92 So. 461.

Lavender & Thompson, of Centerville, for appellee.

Where the record discloses a sufficient finding of facts, the Supreme Court will not re-view the evidence. Gilmore v. State, 99 Ala. 154, 13 So. 536; Odom v. State, 172 Ala. 383, 55 So. 820; Woodword Iron Co. v. Bradford, 206 Ala. 447, 90 So. 803; Ex parte Sloss Co., 207 Ala. 219, 92 So. 458; Ex parte Mt. Carmel Coal Co., 209 Ala. 519, 96 So. 626. And, if supported by any legal evidence, the conclusion will not be reviewed. Ex parte W. T. Smith L. Co., 206 Ala. 485, 90 So. 807; Ex parte Thomas, 209 Ala. 276, 96 So. 233. For definition of willful misconduct, see Nickerson's Case, 218 Mass. 158, 105 N. E. 604, Ann. Cas. 1916A, 790; Ex parte Woodward Ir. Co., 212 Ala. 220, 102 So. 103. The judgment was proper. Acts 1919, p. 218, § 14 (7) (21).

BOULDIN, J. This is a proceeding by certiorari to review the judgment of the circuit court awarding compensation to the dependent widow and minor children of Wiley B. Ellis, deceased.

The defenses relied upon are: That the accident causing death did not arise out of and in the course of the employment; and that the fatal injury was caused by the willful misconduct of deceased. On these issues the findings of fact by the trial judge are as follows:

"(2) That on the 13th day of September, 1923, the said Wiley B. Ellis was in the employment of the defendant, Little Cahaba Coal Company, a corporation, in the capacity of boss driver in the mines of the defendant, and that, during the time of such employment, a fire occurred in one of the headings of the defendant's mine and the said Wiley B. Ellis went into said mine to assist in putting out said fire, and, while engaged in the performance of his duties under his said employment, the said Wiley B. Ellis was killed by an explosion which occurred in said mine.

"(3) That the said injury and death was an accident arising out of and in the course of the employment of the said Wiley B. Ellis by the defendant * * * and that said Wiley B. Ellis was *not guilty of willful misconduct.*"

The question most stressed before us is concisely stated in brief of counsel for defendant petitioner thus:

"It is the contention of the defendant that, by reason of his disobedience of the orders given by the mining foreman, the deceased took himself out of the scope of his employment, with the result that the ensuing fatal accident cannot be regarded as having arisen out of and in the course of the employment."

A bill of exceptions containing the evidence is made part of the record. We look to this to find whether there was any evidence supporting the finding of the trial judge.

[1] The evidence tends to show that it was a general duty of deceased to aid in extinguishing fires in the mine; that he reported

to the foreman for that purpose and was accepted.

The fire was at the face of a heading leading off from the main slope some 500 feet. Near where the heading left the main slope was a cut-through or slant leading from the slope to the return air course. This cut-through, some 40 feet long, was closed by a door.

Efforts were first made to fight the fire with water. For this purpose a valve was opened in a water pipe, acting as a siphon, to draw water into a pool or sump. This valve was located in the return air course near the slant or cut-through mentioned. The use of water was later abandoned, and the plan of smothering the fire, by cutting off the flow of air through the intake, was adopted. At this stage the deceased undertook to go through the slant into the return air course and close the valve in the water pipe. Upon opening the door, a gas explosion occurred, causing his immediate death.

The occasion for closing the valve was twofold. The continued flow of the water might flood the working places of the mine, and the siphon was liable to run dry, putting it out of operation until refilled.

The business of the occasion, out of work hours, was extinguishing the fire in defendant's mine. This special business defined the scope of employment of the men on hand for the purpose. Incident to this was the protection of the property of defendant from unnecessary injury in fire-fighting operations, or the crippling of its agencies and equipment for further use. In the absence of some conditions withdrawing the case from the general rule, closing the valve in the water pipe was within the course of employment of one of the men engaged in extinguishing the fire.

It is in evidence that, in case the siphon had run empty, it would have been the duty of deceased, within working hours, to refill it. This supports an inference that a part of his general duty was to keep this equipment in operating condition. Such circumstance is to be considered in dealing with the alleged orders of the foreman as limiting the scope of employment, or the violation of such orders as willful misconduct cutting off the claim of dependents under our Workmen's Compensation Law.

Looking to the evidence touching the orders given deceased, it appears the work of fire fighting was under direction of Mr. Vernon, as foreman, to whose orders the men were subject at the time. It appears that Mr. Vernon was informed by deceased that he had opened the door of the slant to close the valve, and his light had gone out. Three witnesses depose to what was then said by Mr. Vernon as follows:

Vernon: "No; you stay out of that damn hole there; there can't nobody live in it."

Motes: "You stay out of that air course; you have no business in there; let that siphon go."

Basham: "Stay out of that damn air course; a man can't live in there. * * *" He also told him to leave the siphon alone.

There is other evidence that about the same time Vernon instructed deceased to assist in bringing plank to brattice up the intake. The witness Basham said he did not hear this instruction. What connection this instruction, if given, had with the order or warning given about the air course may be regarded as subject to inferences which were wholly with the trial court.

Our Workmen's Compensation Law, § 9 (Code 1923, § 7544), covers cases "arising out of and in the course of his employment, without regard to any question of negligence." It excepts injury or death caused by willful misconduct or enumerated specific acts of misconduct. It is clearly intended that a distinction should be observed between injuries outside the course of employment and those due to willful misconduct.

[2] Arising out of and in the course of the employment is a condition precedent to compensation in all cases, and, when put in issue by answer, the burden is on the claimant.

[3] Willful misconduct in general, or as specified in the statute is defensive; the burden being on the employer. A jury trial is specially provided to pass upon such defense.

[4] In dealing with a defense based upon orders given by a superior in the employment, three inquiries may arise, viz.: (1) Did such breach place the employee outside the scope of the employment? (2) Was it such willful misconduct as to forfeit the right to compensation? (3) Was it merely contributory negligence, not defeating that right?

If disobedience to orders is within either of the first two classes, the effect is the same, in so far as to defeat the right of compensation. Some cases we think, have merged the two in considering the question of liability. They proceed on the idea that defiance of the master's orders or rules places him without the scope of employment, although he may be still engaged in work for the master of the kind contemplated. For example, Schelf v. Kishpaugh, 37 N. J. Law J. 173, cited by appellant, held that a stoker who, while feeding a furnace, stood on the dangerous side of a pile of fuel in violation of the master's orders, thereby took himself without the course of employment. See, also, 28 R. C. L. p. 790, § 83.

With us the distinction between acts of willful misconduct and those outside the course of employment is to be observed because of difference in form of pleading, burden of proof, and the right of trial by jury.

Whether the alleged violation of orders in the case at bar is to be classed as one or the other, or neither, is the real question for review.

In Frint Motor Car Co. v. Industrial Commission, 168 Wis. 436, 170 N. W. 285, the deceased was an automobile mechanic, employed to keep in order cars during a racing event. A space or pit was allotted for the work and he was given orders to remain therein. He left the pit and while watching the races saw his master's car come to a stop. Thereupon he ran toward the car and was killed by a passing automobile. The court said:

"The mere fact that Wesley was instructed to remain in the pit, and that he violated such instruction, did not put him outside of the scope of his employment," and "the mere fact that he disobeyed orders does not defeat a recovery."

Among the numerous cases cited to support this holding is L. & N. R. Co. v. Fleming, 194 Ala. 51, 69 So. 125. This was an action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), under which contributory negligence is not a bar to the action. In this regard it is like the Workmen's Compensation Law. It was the duty of the plaintiff in that case to test engines coming out of a repair shop. This he was doing by running the engine on the main line at a time and place forbidden by the rules of the company. A collision ensued, causing his death. This court said:

"That he may have acted imprudently, or negligently, or contrary even to some rule provided for his governance, did not necessarily bar a recovery under the federal statute, nor put him without the line and scope of his employment."

In Ex parte Terry, 211 Ala. 418, 419, 100 So. 768, 769, it is said:

"The effect of these and other well-considered cases is to firmly establish the principle, based, of course, upon the theory of a liberal rather than a strict or narrow construction, that an employee's injury may be properly held to have arisen out of his employment, notwithstanding that the act or conduct of the employee to which the injury is proximately referable was not within the scope of his authority, nor strictly within the line of his duty, provided it was reasonably related to the service he was employed to render, and was in good faith done or undertaken in furtherance of the employer's business, and notwithstanding, also, that the injury in question was not one of the anticipated risks of the service."

To like effect is Ex parte Majestic Coal Co., 208 Ala. 86, 93 So. 728. These cases do not involve the violation of special orders given the employee, but state the general principles to be kept in mind in such cases.

Counsel for petitioner have carefully collected and reviewed in briefs numerous authorities worthy of high respect holding, under varying circumstances, that an employee, going into a known place of danger in violation of the rules or orders of the master, puts himself without the scope of employment. In the highly specialized industrial employment of this day, involving the use of dangerous machinery and the development of zones of danger, the employment in the nature of it may be localized and limited to a definite task. If the employee leaves his post and goes without cause into a place of known danger against orders, or undertakes to do dangerous work specially committed to others, although related to his own task, he may, under these authorities, so place himself outside the course of employment as to defeat the right of compensation.

We do not undertake to review these cases, nor seek to work out of them any uniform rule. No general definition can probably improve on the statutory phrase "arising out of and in the course of his employment."

Rules and orders for the conduct of employees are kindred in kind. Special orders from man to man rest upon the relations growing out of business organization. Obedience to orders of those vested with superintendence may be deemed a fundamental rule, express or implied, in such organization. Our statute lists the willful breach of a reasonable and known rule or regulation of the employer, in the class of willful misconduct, an affirmative defense. Ex parte Woodward Iron Co., 212 Ala. 220, 102 So. 103.

We are of opinion that where, as here, there was a temporary employment upon an emergency occasion, and the accident occurred while in the performance of an act incident to the work of the occasion, such as protecting the property of the master, the mere fact that he had an order to desist did not, as matter of law, take the employee out of the scope of employment, and that the right to compensation depends on whether, under the circumstances, the act of the deceased was willful misconduct under the law.

The defense of willful misconduct is thus presented in the answer:

"Plaintiff's intestate, with full knowledge that the same contained smoke and explosive and dangerous gases, and that great bodily harm might come to him from entering same with an open flame lamp, or that he might suffocate or be overcome by said smoke, willfully entered or attempted to enter into a chamber in defendant's mine with an open flame lamp, which chamber contained inflammable and explosive gases, and as a proximate consequence thereof the said gases were caused to explode and did explode, and plaintiff's intestate was thereby killed."

The violation of the order of the foreman not to go into the air course is not specially set up as willful misconduct, but may be looked to in support of the charge of willfully entering into a place of known danger.

The evidence well supports an inference that neither the foreman nor the deceased had in mind any danger from explosive gas; that experienced miners, not possessed of scientific knowledge, would not have suspected the presence of such gas; and that the order, or warning advice, was given and understood as a protection to the deceased from suffocation from heat and smoke then passing through the air course. It is also a fair inference from the evidence that opening the door and closing it again would not so short circuit the air as to endanger men working in the heading. As against danger from heat and smoke in the air course, the deceased could guard by withdrawing if actually encountered. These facts may be looked to in passing upon the issue of willful misconduct, and, we think, in passing upon whether deceased was consciously and intentionally disobeying a known order expressive of the master's authority, or whether he esteemed it as matter of warning advice. We do not mean to hold willful disobedience of orders may not be willful misconduct; the question in each case is to be judged on the same principle as willful violation of rules under the statute.

Viewing the case in the light of inferences which the court below was free to draw, and from what appeared to the parties before, and not after, the disaster, we find no such willful misconduct shown that, as matter of law, the dependent widow and children should be denied compensation. Ex parte Woodward Iron Co., 212 Ala. 220, 102 So. 103.

[5] The trial court, finding the deceased left a dependent widow and three minor children entitled to compensation, awarded compensation at the rate of $15 per week for 300 weeks.

Appellant petitioner insists it should have been fixed at 50 per centum of the weekly earnings, or $14.10 per week. This view is based upon Acts 1919, p. 218, § 14, subd. 7 (Code of 1923, § 7554). The court followed section 14, subd. 21 (Code of 1923, § 7562). This was in harmony with the approved construction of like provisions in section 13 (h), being Code of 1923, § 7551, fixing compensation in case the injured employee has dependent minor children. Ex parte Majestic Coal Co., 208 Ala. 87, 93 So. 728; Ex parte Shaw, 210 Ala. 185, 97 So. 694.

We find no error in the amount of compensation allowed.

Writ denied; judgment affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.