(126 So. 626)

## MOBILE LINERS, Inc., v. McCONNELL.

### 1 Div. 555.

Supreme Court of Alabama.

Jan. 23, 1930.

Rehearing Denied March 20, 1930.

564

Smith & Johnston, of Mobile, for appellant.

Harry T. Smith & Caffey, of Mobile, for appellee.

THOMAS, J.

The petition is for statutory writ of certiorari under the Workmen's Compensation Act (Code 1923, §§ 7534–7597). There was judgment for dependents after due notice, pleading, and evidence.

The trial on the evidence resulted in sufficient finding of facts, adjudication of dependence, and that they were within the provisions of the statute.

The controverted issues in the case are: (1) Defendant's denial that the death of Robert L. McConnell was caused by an accident arising out of and in the course of his employment, and (2) defendant's claim that the business, employment, and his (McConnell's) injury were within the statutory exception of

employers who "regularly employ less than sixteen employees in any one business." Section 7543, Code.

■ It is conceded that the statute must be liberally construed to the end in view and relief to be awarded, and all reasonable doubt resolved in favor of the employee. In National Cast Iron & Pipe Co. v. Higginbotham, 216 Ala. 129, 112 So. 734, 735, the statute reading "casual and not in the usual course of the trade, business," etc., was liberally construed to the attainment of the end in view, and with reference to the hardships and evils to be remedied; and to this end the authorities are collected. The fact that an employee was recently employed, or was working by the day instead of by the job, did not render his employment casual and not in the usual course of the business or trade. Ex parte Little Cahaba Coal Co., 213 Ala. 596, 105 So. 648.

■ If there is any doubt about an *exception or proviso* in that statute that must be judged on the assumption that the rule is broader than the exception, all doubts and implications shall be resolved in favor of the rule. Ex parte Majestic Coal Co., 208 Ala. 86, 93 So. 728; National Cast Iron & Pipe Co. v. Higginbotham, supra; Umble v. State, 207 Ala. 508, 93 So. 531; Ex parte Lusk, 82 Ala. 519, 2 So. 140; Eddington v. N. W. B. Tel. Co., 201 Iowa, 67, 202 N. W. 374.

■ The construction of the statute is to the effect that it embraces all injuries that arise out of, or occur while a workman is doing what a man under like facts and circumstances, engaged in that or like employment, may reasonably do within the time, place, and business during which he is employed. That is, may reasonably do (1) *within the time* during which he is employed, and (2) at a place where he may reasonably be during that time, (3) in the conduct or projection of the employer's said business or work, or in the promotion or safeguarding of his said business, or for the protection of the men and properties while engaged or used for the purpose of the master's said business. Ex parte Majestic Coal Co., supra, wherein protection was in the line of duty and employment. And this has been held to cover all injuries "arising out of the employment" in the act or conduct proximately referable, though it may not be within the scope of authority or strict line of duty, and may not be an anticipated risk or service, if the act reasonably related to the service and was done in good faith and in furtherance of the employer's business. Ex parte Terry, 211 Ala. 418, 100 So. 768. Whether work was reasonably related to the employee's duties, and whether done in good faith in furtherance of the employer's business, are recognized tests of whether resulting injury arose out of the employment. Vickers v. Alabama Power Co., 218 Ala. 107, 117 So. 650. The performance of any act

made necessary to the defendant's business by reason of an emergency is within the scope of the employee's duty—was the holding in Ellis v. Little Cahaba Coal Co., 213 Ala. 244, 104 So. 422.

■■ A plaintiff has the burden of proving that an employee's injuries arose out of and in the course of employment. Ex parte Coleman, 211 Ala. 248, 100 So. 114; Garrett v. Gadsden Cooperage Co., 209 Ala. 223, 96 So. 188; Sloss-Sheffield S. & I. Co. v. Harris, 218 Ala. 130, 117 So. 755; Ex parte Little Cahaba Coal Co. (Ellis), 213 Ala. 244, 104 So. 422. And if there is a reasonable view of the evidence that will support the conclusion announced by the trial court, the finding and judgment will not be disturbed. Summit Coal Co. v. Walker, 214 Ala. 332, 107 So. 905, and authorities; Ex parte Morgan-Hill Paving Co., ante, p. 480, 126 So. 116; Sloss-Sheffield S. & I. Co. v. Jones, ante, p. 10, 123 So. 201.

Such is the rule though there be conflicting tendencies presented by the evidence. Martin v. Sloss-Sheffield S. & I. Co., 216 Ala. 501, 113 So. 578, and authorities cited; Ex parte Sloss-Sheffield S. & I. Co. (Greek's Case), 207 Ala. 219, 92 So. 458; Hardisty v. Woodward Iron Co., 214 Ala. 256, 107 So. 837; Ex parte L. & N. R. Co., 208 Ala. 216, 94 So. 289; Ex parte Gadsden Car Works, 211 Ala. 82, 99 So. 725; Ex parte Woodward Iron Co., 211 Ala. 111, 99 So. 649.

We are of opinion that the trial court was well within reasonable tendencies of the evidence that decedent, at the time of his accident and death, was engaged in assisting the captain of the steamship Lake Treba to get on board that (his) ship, which was then lying at Turner Terminals, and that in so doing McConnell was acting within the line of his duties under his said employment with Mobile Liners, Inc., defendant in the petition, and while so engaged, accidently fell from the wharf into the river and was drowned; that petitioners were dependent upon decedent at the time of his death.

Thus we are brought to the consideration of the defense or insistence of appellant that the Mobile Liners, Inc., was within the exception provided in section 7543, Code, of employers who "regularly employ less than sixteen employees in any one business."

It appears from the agreement of counsel set forth in the record that the Mobile Liners, Inc., had for a long time been engaged in the business of managing the affairs of the steamships, for their various owners, and continuously employed nine persons in its office work and one dock superintendent. In addition to these, however, it employed a large number of men as checkers upon the various vessels which it operated and while at port, etc. These men it employed through its dock superintendent, Mr. Austin, in the name of the

defendant. All of them, except those who checked upon the vessels belonging to the Transmarine Corporation, were paid by the Mobile Liners, Inc., out of its own bank account. Those who were employed on the vessels of the Transmarine Corporation were also paid by the defendant in its own name, but out of the proceeds of checks drawn on the Transmarine Corporation, payable to the company. While there was this distinction between the checkers employed upon the vessels of the Transmarine Corporation and those employed upon other vessels, the fact is that all of these checkers were employed by Mr. Austin, who was the port superintendent of the Mobile Liners, Inc., and who acted as its representative without informing the men employed that it was the action of and as an agent, and without disclosing the name of the principal. These checkers were all employees of the Mobile Liners, Inc.; they were subject to its orders and discharge, and the Mobile Liners, Inc., was liable to them for their compensation.

■ It is established in this jurisdiction that when an agent employs a third person without disclosing the name of his principal, he is personally liable for the employee's wages and the relation is that of master and servant. Wood Ex'r v. Brewer & Brewer, 73 Ala. 259; Brent v. Miller & Co., 81 Ala. 309, 8 So. 219; Dexter v. Ohlander, 93 Ala. 441, 9 So. 361.

■ The relation between the Mobile Liners, Inc., and their men and laborers, was that of master and servant, just as surely as if it had been the absolute owners of the vessels which they operated for a commission for the owners or charterers.

These checkers were not employed every day, but were employed for each vessel when it was in port. The arrival of these vessels was regulated according to the usual course of business. The number of such employees and the days of their employment are all scheduled in the exhibits attached to the agreement. It appears from the terms of the agreement that the checkers were employed in each instance upon an average of every two to five days. A reference to these tabulated statements will show that the checkers were employed by the Mobile Liners, Inc., in the regular course of its business in handling the ships for which it was the agent, at regular intervals according to the arrival of the ships, and that the average number of employees on these occasions, including the office force and the checkers, exceeded sixteen.

■ The question for decision is: Whether an employer, who is engaged in a business of managing vessels which arrive in port periodically, is regarded as falling within the exception of those who "regularly employ less than sixteen men," simply because his employment of sixteen men is not constant and continuous, when that business is such as to require less than sixteen men at times when ships are not in port, and when the nature of the business calls for little activity; but which requires sixteen or more men in the execution of business of the common enterprise, and upon occasions of caring for vessels in port, for which it is agent and which event regularly occurs in the conduct of that business. That is to say, owing to the arrival of vessels, or any other incident to the business which does not happen each and every day, but does happen at repeated intervals, and which must happen in the ordinary course of business and the carrying on of the common enterprise of defendant, does that employer fall within the statute or within the exception? Stated otherwise, is the classification of the master, and the status of the deceased, to be determined under the statute by the number of men that defendant employs constantly and continuously, or by the number of men that it employed upon the constantly recurring conditions of its business and which requires an increase in the force of laborers at fixed recurring periods? It is immaterial that such periods are not at definite and stipulated dates, but are fixed by the ordinary course of the conduct of business of shipping upon the high seas and in port, on the arrival of vessels discharging or taking on cargoes.

The defendant and its insurer understood that the defendant was within the statute, and did not fall within the statutory exception, by its safeguardings by insurance. The theory which the defendant urges for adoption by the court is different from that upon which the defendant itself acted in the conduct of its own business and safeguarded by insurance. This appears from the agreement of counsel, where it is agreed or stipulated that the Mobile Liners, Inc., carried insurance against liability, such as is sought to be enforced in this case, in the United States Casualty Company, by policy covering the year 1928, and that the premiums paid upon said policies were regulated on the estimated pay roll, upon the basis of the percentage of the estimated pay roll of the *very checkers whom it would now exclude from the count of its employees.*

■ In approaching the authorities upon this subject, we must, of course, remember that the statute fixes the rule for the employee generally, and that the provision of section 7543 of the Code, excluding employers who regularly employ less than sixteen men, is in the nature of an exception or proviso, and that the burden is upon the employer to bring itself within the terms of that exception or proviso. National Cast Iron Pipe Co. v. Higginbotham, 216 Ala. 129, 112 So. 734.

■ The exception of those who "regularly employ less than sixteen men" must rest upon some intelligent reason or basis; and this

purpose evidently has to do with (1) the nature of the provision that the employer must make for the safety of those whom he employs, the importance of which may vary according to the number of men employed; and (2) cannot be affected by the question as to whether these men are employed continuously or at required or stated periods, or (3) by the question as to whether the identity of the men employed remains the same, or changes from time to time. National Cast Iron Pipe Co. v. Higginbotham, supra. The word "regularly" is not synonymous with "constancy." There are businesses of importance which employ numbers of men *regularly*, who employ none of them *continuously*. And a number of businesses, as this, will require a large number of employees, nearly all or a large number of whom are employed only *periodically*, for the reason that the needs of the business require their services only at intervals or periods, whenever the business is in active operation. We may illustrate by amusement parks, theaters, places of entertainment, building or construction contractors who have or may have many men working for them, and yet fall within the class of those who cannot foretell the number of workmen they will have or need on the first of the next month or a given, designated date.

Counsel have submitted with brief well-considered decisions in reports of the various commissioners under the state workmen's compensation acts. In the case of Winfield-Clements v. Columbus Saw Mill Co., the Industrial Commission (Ohio) Claim No. 101, had this precise question before it. The Commission said:

"From the evidence it appears that the number of employees average four and a fraction if the total number of working days are taken into consideration for a specified period of time, but if the time during which the mill was actually in operation is to be considered, the company had in its employ more than five workmen or operatives, not including the secretary-treasurer who, it appears from his testimony, devotes his whole time to the affairs of the company and does not merely perform duties pertaining to the position of secretary-treasurer. * * *

"In the claim under consideration it is very clear that whenever the mill was in operation there were more than five workmen employed. In other words, in order that the mill may properly operate there must be five or six men engaged therein. While it is true that the mill operates only a part of the year, yet the business may be defined to be a regular business of operating a saw mill when work is being done in the mill." (This case is not in our Supreme Court Library.)

In Evelyn C. Boyle, Widow of William R. Boyle, v. John J. Mahoney et al., reported in part 1, page 236, and part 2, page 131, vol. 2,

Digest of Connecticut Compensation Decisions, pp. 236, 244, the Commission declared:

"The act does not require that the same employees be employed regularly, it simply calls for regularity in the number of employees, the language being 'having regularly less than five employees.'

"It is conceivable that a business might be run, not by men steadily employed, but by throwing the doors open each morning to the first comers. Certainly under these circumstances the number of men in fact employed, independent of the personnel of the persons employed, would determine whether or not the parties came under the terms of the Compensation Act. One of the reasons for a difference in rule between large employers and small employers is that the risks increase and the personal care of the employer decreases as numbers grow. Certainly these dangers are not less than when the mass of employees is constantly shifting. If, therefore, a certain number of employees is a complement for the carrying on the business, it is a mere circumstance that the individuals may change. * * *

"It is true that at the moment of the injury the musicians were not playing. That circumstance has no more significance than has the fact that when a night watchman in a large factory is hurt he may be the only person on duty. The test is, what in the period of time, of reasonable extent, of which that moment forms a part, is the force which was engaged in carrying on the common enterprise."

In the case of Green v. Benedict, 102 Conn. 1, 128 A. 20, 21, the court said: "It is claimed that the commissioner's finding that the respondent regularly employed less than five employees at the time of the injury is a finding of fact which this court will not disturb. We think, however, that it is not only a conclusion inconsistent with the subordinate facts found, but that it also involves an erroneous interpretation of the statutory term 'regularly.' In this connection the commissioner's memorandum indicates that he was largely influenced by the fact that the average daily number of employees during the period in question was less than five, and also by the fact that respondent had no definite quota or standard number of employees. These considerations leave out of sight the decisive point that the statute requires regularity in the employment of less than five as the basis of exemption from the provisions of section B. An employer might employ five employees every working day in the year except one, and if on that day alone he employed only four, the average for the year would be less than five. Yet no one could say that he regularly employed less than five during that year."

The Supreme Court of Wisconsin said in Holmen Creamery Ass'n v. Industrial Com-

mission of Wisconsin, 167 Wis. 470, 167 N. W. 808, 809: "The defendant Creamery Association was engaged in the business of conducting a creamery. For the proper conduct of such a business a building was necessary. It is the common experience of mankind that buildings need repairs from time to time. Indeed, it is so common that the income tax law allows for the deduction of repairs from rentals received, and all business concerns of any magnitude provide for a repair account or a fund to meet such expenses. It is in evidence that the claimant here had several times repaired this building. The making of repairs therefore belongs to the category of things to be expected and provided for. True, repairs come at irregular intervals, and one cannot accurately foretell just when they will be needed. But needed they will be in any business that endures for any considerable length of time. They are therefore a part of the employer's business, to be anticipated and met when necessity or convenience dictates. Being an essential and integral part of every business employing material things in its prosecution, no reason is perceived why one employed to make them should not be classed as an employee of the one for whom they are made. They are essential to the successful prosecution of every business whose implements are subject to the corroding touch of time and a usual concomitant thereof. They are foreseen, provided for, and made, when necessary or convenient. The fact that one cannot exactly foretell just when they will have to be made is immaterial."

There is analogy to be found in decisions defining the words "regularly employed" and those of "casual employment." The word "regularly," as used in the statute, refers to the question as to whether the *occurrence is or is not in an established mode or plan in the operation of the business, and has not reference to the constancy of the occurrence.* National Cast Iron Pipe Co. v. Higginbotham, supra; F. W. Dodge Co. v. H. A. Hughes Co., 110 Md. 374, 72 A. 1036; Millard County v. Industrial Commission, 62 Utah, 46, 217 P. 974; Utah Copper Co. v. Industrial Commission, 57 Utah, 118, 193 P. 24, 13 A. L. R. 1367; Fiorot v. Braide, 279 Pa. 247, 123 A. 779; Hauger v. H. W. Walker Co., 277 Pa. 506, 121 A. 200; Gotchy v. N. D. Workmen's Compensation Bureau, 49 N. D. 915, 194 N. W. 663. See, also, 28 R. C. L. p. 766, § 62.

Adverting to the agreed statement of fact in this case, we note that the defendant constantly employed nine persons in its office and a port superintendent; that its business consisted in looking after the affairs of the vessels of others which came into port at regular intervals; that when there were no vessels in port, its office force and port superintendent did all of the work, but that whenever one of the vessels was in port, it employed a large number of men in addition to its regular office force. The tabulated statement attached demonstrates that the checkers regularly employed by it, when added to its office force, exceeded the statutory number of sixteen. It is admitted by the agreement of counsel, as we have indicated, that the Mobile Liners, Inc., carried insurance such as is sought to be enforced in this case in the United States Casualty Company for the period covering the year 1928, and that the premium paid upon said policy was regulated by the estimated pay roll upon the basis of a percentage of the estimated pay roll of its tallymen, checkers, and clerical force, and that the pay roll of tallymen and checkers was estimated as including all the checkers hereinabove mentioned.

There is nothing whatever in the claim of defendant that it fell under the exception of employers who regularly employ less than sixteen men. There is not a total lack of evidence on either question disclosed. Ex parte Big Four Coal Mining Co., 213 Ala. 305, 104 So. 764. We decide as a matter of law.

The writ is denied, and judgment affirmed.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.