(134 So. 878)

## REPUBLIC IRON & STEEL CO. v. INGLE.

6 Div. 867.

Supreme Court of Alabama.

May 21, 1931.

Benners, Burr, McKamy & Forman, of Birmingham, for appellant.

Windham & Countryman, of Birmingham, for appellee.

128

GARDNER, J.

By this proceeding the widow of Albert Ingle seeks recovery for his death under our Workmen's Compensation Statute. Code, 1923, § 7543, et seq. Ingle was night watchman and special police officer at defendant's camp, having been appointed a special deputy sheriff upon defendant's request. He was killed on the night of August 3, 1930, while on duty as a watchman at the camp, having been shot with a pistol by some unidentified person. That his death was the result of an accident within the meaning of our Compensation Statute is well established, and not here questioned. Garrett v. Gadsden Cooperage Co., 209 Ala. 223, 96 So. 188, 190; Ex parte Coleman, 211 Ala. 248, 100 So. 114, 115; Sloss-Sheffield Steel & Iron Co. v. Harris, 218 Ala. 130, 117 So. 755.

But it is strenuously insisted that the accident was not one arising out of and in the course of the employment. The burden of proof in this respect was upon the plaintiff. It is not sufficient that the injury occur in the course of the employment. It must also arise out of the employment. Jones v. Sloss-Sheffield S. & I. Co., 221 Ala. 547, 130 So. 74; Ex parte Little Cahaba Coal Co., 213 Ala. 244, 104 So. 422; Sloss-Sheffield S. & I. Co. v. Jones, 220 Ala. 10, 123 So. 201.

Decedent met his death while on duty as night watchman of defendant, and that the accident was one arising in the course of his employment is established without dispute. Did it arise out of the employment is the pivotal question in the case. The solution of questions of this character must depend upon the particular facts and circumstances, as no exact formula can be laid down which will automatically solve every case. Prayther v. Deepwater Coal & Iron Co., 216 Ala. 579, 114 So. 194.

A review of the trial court's ruling awarding compensation is here sought by bill of exceptions containing the evidence upon which the cause was tried with exception of a number of photographs of the locus in quo, which were examined by the court with the aid of counsel for the respective parties, and to which some of the witnesses referred in giving their testimony, and which do not appear in the record. While these photographs doubtless offered some aid, we attach no great importance to their omission in view of the fully developed evidence in the cause. Nor are we concerned with conflicts which appear in the proof, as we are not called upon to determine the weight of the evidence. It has been settled by our decisions that if, on any reasonable view of the evidence, it will support the conclusion reached in the trial court, the finding and judgment will not be disturbed. Or, to state the matter differently, and in the language of Ex parte Coleman, supra: "Where there is any substantial legal evidence in support of the finding of the trial court, the judgment, whether affirmative or negative, will not be disturbed on appeal." And upon the necessity of showing that the injury arose out of the employment, it is likewise the settled rule that to "justify recovery 'The rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment, and not by some other agency.' * * * 'Not that the injury must be one which ought to have been foreseen, but it must be one which, after the event, may be seen to have had its origin in the nature of the employment.' " Garrett v. Gadsden Cooperage Co., supra.

A brief reference to some of the salient features of the evidence will suffice, we think, to demonstrate the correctness of the ruling of the court below. Decedent's position as night watchman and special officer for defendant served to expose him to peculiar hazards. Dean v. Stockham Pipe Co., 220 Ala. 25, 123 So. 225; McLaughlin v. Davis Lumber Co., 220 Ala. 440, 125 So. 608. Decedent's hours were from 6 p. m. to 6 a. m. He lived just across the street from the defendant's commissary, and just opposite the house occupied by defendant's superintendent. It was his duty to make the "rounds" and "punch the clock" every hour. On the night he was killed, decedent, having just completed his round and punched the clock, came across the superintendent's yard, turned on a light at the corner house, and came back to sit down on his doorstep. While sitting there, as he frequently did upon completing the hourly round, a negro girl "came out of the camp * * * from down toward the mines," approached deceased, called him "out a little piece" and asked to speak to him. What was said is left to conjecture, as no one testifies thereto. Plaintiff's evidence tends to show there "was a fight on," and, in any event, from all the facts and circumstances, a reasonable infer-

ence may be drawn that there was some character of disturbance near by among some ten or twelve negro men, and in decedent's encounter with these negroes the fatal shot was received.

There is evidence also tending to show that the boundaries of defendant's property are not marked or well defined, and that a number of the employees live in houses adjoining the camp; one witness testifying, "You can't tell the difference in the company's houses and these others where the line is, one continuous camp." Plaintiff's proof further tended to show that the point where decedent's body was found immediately following the shooting was ninety-six steps from defendant's property line.

Petitioner insists that decedent's duties were confined strictly within the property line of defendant, and that, having met his death beyond that line, he had placed himself beyond the sphere of his employment, and that the case comes within the influence of Jones v. Sloss-Sheffield S. & I. Co., 221 Ala. 547, 130 So. 74; Bullard v. Cullman Heading Co., 220 Ala. 143, 124 So. 200; Sloss-Sheffield S. & I. Co. v. Jones, 220 Ala. 10, 123 So. 201.

But we think the evidence justifies the conclusion that decedent's duties were not so narrowly defined. He was night watchman and special deputy, but was paid by defendant. He was to keep order, protect the defendant's property, preserve the peace, and prevent disturbance in the camp. In the performance of his duties the evidence shows that he frequently went beyond the property line of defendant to quell disturbances, which fact, we conclude, it may be inferred was known to the superintendent. True, the superintendent testifies as to decedent's duties that he was to keep off trespassers from the property, prevent theft, look out for fires, and "quell any disturbances that might occur within our property lines, that is, within our camp," and that all such activities were confined to defendant's property line. But upon further examination he admitted that, if an employee carried away any personalty of defendant, decedent's duties would have permitted him to follow into Mason City, the adjoining territory, for the apprehension of the thief and recovery of the property, saying: "I didn't draw any hard and fast rules; the company property is not fenced in by any brick wall or board fence or anything like that; in a lot of places there was no defined mark except the distinction in the type of houses." We conclude, therefore, from the examination of all the evidence, there was substantial legal proof sustaining the trial court in the finding that decedent's duties included the maintenance of "law and order on and around defendant's property," and that they were not necessarily circumscribed by an imaginary property line, and the court was justified in finding that, when he was summoned to quell this disturbance, he was acting in the discharge of his duties, and within the line and scope of his employment.

The cases from this court relied upon by petitioner, and which are noted above, have been re-examined in the light of appellant's argument, but we are of the opinion the facts therein disclosed clearly differentiate them from those here presented. Nor need we discuss those cited from other jurisdictions, illustrative of the principles recognized in our own decisions which serve all purposes for the instant case.

We therefore conclude that the writ should be denied, and the judgment affirmed, and it is so ordered.

Writ denied. Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.