199 So. 716

**KNIGHT IRON & METAL CO. v. ARDIS et al.**

**6 Div. 719.**

Supreme Court of Alabama.

Oct. 10, 1940.

Rehearing Denied Dec. 12, 1940.

306

Horace C. Wilkinson, of Birmingham, for the motion.

Erle Pettus and Ben F. Ray, both of Birmingham, opposed.

FOSTER, Justice.

We take the facts recited by the Court of Appeals, and consider none not so stated. From them we note the following:

This is an action for damages on account of personal injuries inflicted by one Holmes, alleged to be acting in the line and scope of his authority as the servant of petitioner. The Court of Appeals affirmed the judgment of the lower court, and appellant has applied to us for certiorari.

There was no general strike in petitioner's plant, but "some two dozen or so" of its employees did so. Their places were filled by putting others in them. This created high feeling among the strikers and their friends.

"When 'quitting time' came, on a certain day when the business was being carried on as above, those working in appellant's place of business in the place of those out on strike were afraid to leave the plant. According to the testimony some of them started away and were 'run back' by the crowd outside.

"The General Manager of appellant had 'called the police' just prior to this time—or about this time—to escort these laborers away from the plant.

"Some of those working in the plant in the stead of those 'out on strike' asked the driver of a truck belonging to another and different concern, but which truck and driver were on appellant's premises at the time —having come there to deliver some articles to appellant—to 'carry them out,' and 'through the crowd.' This truck driver did so; being followed out by a car containing the policemen who had come out to appellant's place of business at the call of its General Manager.

"Some of the others of these men working in the places of the strikers asked an old employee of appellant's, who was working there that day, but who was not a foreman, but merely a laborer, and who owned and had present at the plant a Ford car, to 'carry them out' and 'through the crowd.' This request was made in the presence of appellant's General Manager.

"This old employee—Holmes by name—testified at the trial, and he said that when these laborers asked him to 'take them out' he asked the General Manager if 'he had a pistol there.' And that the General Manager replied: 'Well there was (is) one over on the desk.' And Holmes testified that he got the pistol from the place indicated by the General Manager, and took it with him as he drove out with the laborers on board. A car containing policemen, as above herein mentioned, followed Holmes' car on its first trip—he made two—as it made its way, loaded with the laborers referred to, out through the crowd surrounding appellant's plant.

"Either going through the crowd, on his way out from appellant's plant, or coming back through it, on his way back to the plant, Holmes, who said he was frightened, fired the pistol, procured as above, two or three times—toward the ground, as he said—in order, as he testified, to 'scare' the people composing the crowd.

"Bullets from two of said shots struck the plaintiffs in these suits. And the undisputed testimony shows that neither of them was connected in any way with the 'strike' in progress at appellant's plant; but that both of them were going about their own private concerns on a public street where they had a perfect right to be,—John Ardis on his way home from work in another locality; and the little girl, Luvenie Smith, at play with some other children.

"The testimony shows that Holmes, after returning to appellant's plant from his second trip carrying these laborers as above—all the while having available the pistol procured as we have described—was 'taking a bath' at the plant—as was his custom—and 'changing his clothes,' when the police officers came and arrested him.

"And plaintiffs' testimony was that when the policemen came to arrest Holmes, to put it in the words of officer Phillips who testified: 'We took him into the office (of appellant) and Mr. Knight (appellant's general manager) gave us the pistol that Mr. Holmes had shot the people with. He got it out of one of the drawers in the desk there.' And, further (Question to officer Phillips) 'And did you hear Mr. Knight, the Manager of the plant, tell Mr. Holmes what he was going to do?' Answer: 'Mr. Knight said he would take care of things' —'Yes, that was in reply to Mr. Holmes telling him that he had gotten in trouble by shooting these people; that Mr. Knight told him he would take care of it.'

"Of course it should be noted that appellant's General Manager testified that he told Holmes, when Holmes agreed to, and did, 'carry out' the laborers, above—at least 'two loads' of them—that (when Holmes asked him about 'taking the men to town'—as he phrased it) 'If you do, it will be at your own risk, because I am not going to instruct you to take anybody away from the plant.' And there may be a denial of some part of what we have narrated above as 'being shown by the testimony;' at least, though, the testimony on behalf of appellees tends to show as we have outlined. And that, for the purpose we have in mind, is sufficient."

We observe that there is no finding that the employer agreed to transport them to or from its plant for work or to protect them in any respect at a time when they were not on duty. Holmes' act in carrying off some of them was under an arrangement between him and the employees, under the court's finding, outside the scope of his employment, unless the circumstances attending the arrangement were such as to bring it within his employment. That is the question here involved. Such inference cannot be drawn from those circumstances unless it is supported by the following features of it: (1) The arrangement was made between Holmes and the employees in the presence of the general manager. (2) Holmes asked the general manager "if he had a pistol there" and was told by him "there was one over on the desk," which Holmes got and used on the occasion. (3) After Holmes' arrest the general manager told him he would take care of things. (4) The general manager called for police protection of the men leaving the plant, but did not otherwise undertake to do so.

We may assume with the Court of Appeals that the employer was interested in getting the temporary employees home. But this assumed interest does not show that a duty was created or existed in that connection. The fact that employees ar-

ranged among themselves for one of them to transport the others home through hostile threatening strikers, in which arrangement the general manager had no part except to consent for them to take a pistol he had, does not justify a finding that the general manager was a party in his capacity as such, to the arrangement, so as to make it the act of the employer. Holmes, though acting in his presence, did not undertake to act for the employer, or in its interest in respect to a duty it owed or had obligated to render to the employees so engaged. The consent to use the pistol did not change the nature of the arrangements as between the individuals, personally, to one with the employer. The fact that the general manager told Holmes after his arrest that he would take care of things likewise does not serve to change the status of the parties.

The finding of facts does not show that the occurrence took place on the premises of the employer, but, as we interpret it, the place was probably off such premises where the crowd of strikers and their friends had gathered in a threatening attitude.

■ We look to the Workmen's Compensation Law for analogy. Section 7596(j), Code Supp.1936, excludes from compensation all injuries except while employees are "engaged in, on, or about the premises where their services are being performed, or where their services requires their presence at the time of the accident, and during the hours of service as such workmen." This has been held not to include the time when the employee was going to and from his place of service, unless the employer had engaged as a part of his contract to transport the servant to or from the place of service. See Sloss-Sheffield Steel & Iron Co. v. Thomas, 220 Ala. 686, 127 So. 165. But the employee is still so engaged though leaving or entering the place of service, for a reasonable time and space while he is at or near his place of employment. Overton v. Belcher, 232 Ala. 396, 168 So. 442.

But we do not suppose that would apply to an employee though so situated engaged in service out of the scope of his employment. We inquire whether an accident to Holmes while rendering this service to the other employees could be classed as one which occurred in the course of his employment, and arose out of it.

We have held that when a servant is employed to do a certain service and is injured in the performance of a different service, voluntarily undertaken by him though in the master's interest, the master is not liable. Morgan v. City of Guntersville, 239 Ala. 669, 196 So. 877.

We further observe that there is no situation here shown where an emergency arose in which immediate action is necessary to avert impending peril (see Ex parte Little Cahaba Coal Co., 213 Ala. 244, 104 So. 422); nor where the employee was doing an act for his employer which facilitated the work for which he was employed, and in which he was then engaged, or reasonably related to it, and was done in good faith in furtherance of the master's business. Morgan v. Guntersville, supra; Bullard v. Cullman Heading Co., 220 Ala. 143, 124 So. 200.

In the instant case, the jury might infer that Holmes was acting in furtherance of his master's interest in transporting the employees home. But such interest was only an indirect one, since it does not appear that in doing so, he was aiding the master in performing an obligation it owed to such employees.

If the master here, through its general manager, expressly or impliedly consented for Holmes to act for the master in transporting the employees to their homes, the master would be liable for the acts of Holmes done in the promotion of that service. Miller-Brent Lumber Co. v. Stewart, 166 Ala. 657, 51 So. 943, 21 Ann.Cas. 1149.

And if there was any duty by the employer to transport them to their homes or to conserve their safety in transportation, the jury might find that the acquiescence of the general manager served to make the employer liable for the acts of Holmes in rendering the service.

■ The matter of controlling importance is that of the duty of the master to the employees being transported by Holmes. In the absence of such duty, Holmes' act was not in a legal sense in the promotion of the master's business. He was doing an act of courtesy to his fellow employees, at their request. The acquiescence of the general manager did not change that status. True, he might have then assumed an obligation not theretofore existing by engaging the services of Holmes for that occasion and to do that act. But he was not so requested, and did not so undertake. The employees did not ask him to transport them nor protect them, though he did

call the police to do so. They asked Holmes to render them that service. The acquiescence of the manager related to their request of Holmes to do a personal act not a part of his duties to the employer. We quote the language· of Justice Stone of the United States Supreme Court: "The bare fact that the employer voluntarily provided some protection against an apprehended danger, by undertaking to do something which involved no special knowledge or skill, can give rise to no inference that it undertook to do more." St. Louis-San Francisco R. Co. v. Mills, 271 U.S. 344, 46 S.Ct. 520, 521, 70 L.Ed. 979.

We think that on the facts herein recited, the affirmative charge should have been given for defendant.

GARDNER, C. J., and THOMAS, BOULDIN, and KNIGHT, JJ., concur in the foregoing features of this opinion.

BROWN and LIVINGSTON, JJ., dissent on this point, and think that the question was properly treated by the Court of Appeals.

Petitioner also insists that the Court of Appeals erred in holding that there was no error in refusing to allow him to ask Holmes whether he took these people on his "own responsibility." He insists that this is no more than an effort to prove by the witness the extent of his authority as agent. Of course this can be done in a proper way. Nearhos v. Keith, 221 Ala. 643, 130 So. 409.

The use of the word "responsibility" was held to be a proper method of making this proof in Emerson v. Lowe Mfg. Co., 159 Ala. 350, 49 So. 69. But we think that case should not be held to be a guide in all others. We rather approve the idea that it depends upon whether the evident purpose is to obtain his interpretation of the facts or the exact extent of his employment.

In the instant case, it seems to some of us that he was calling on the witness to interpret the facts which had been proven on the trial. No one had contended that it was a part of the duties of his general employment to transport those employees. But the issue was the effect of the proven facts. The question did not call for a statement of the extent of his authority, nor did it call for what occurred on that occasion. Holmes testified to that as the Court of Appeals finds.

It is the view of some of us that the Court of Appeals was correct in holding that no reversible error is here shown. These are the views of Justices BOULDIN, BROWN and the writer.

But upon consideration of the question on consultation, a majority of the Court, consisting of GARDNER, C. J., THOMAS, KNIGHT and LIVINGSTON, JJ., are of the opinion the question was proper under the case of Emerson v. Lowe Mfg. Co., supra. They are further of the opinion the cases of Linnehan v. State, 120 Ala. 293, 25 So. 6, and Hurst v. State, 133 Ala. 96, 31 So. 933, are also applicable, in view of the fact that this was a question asked on cross-examination where the liberality of the rule is well understood.

The writ is awarded. Judgment of the Court of Appeals is reversed, and the case is remanded to that court for further consideration.

Writ awarded. Reversed and remanded.

All the Justices except BROWN, J., concur in the conclusion that the writ should be awarded, and their several views are stated above.

BROWN, J., dissents.