27 So.2d 209

**ALABAMA BY–PRODUCTS CO. v. LANDGRAFF.**

6 Div. 230.

Court of Appeals of Alabama.
March 5, 1946.

Rehearing Denied May 14, 1946.

Cabaniss & Johnston, W. H. Trueman, and E. T. Brown, Jr., all of Birmingham, for appellant.

Lipscomb & Lipscomb and W. E. Brobston, all of Bessemer, for appellee.

346

**CARR, Judge.**

A certiorari in a workmen's compensation case brings this appeal here for review.

The Reporter will set out the findings and decree of the trial court.

Counsel agreed on certain essential facts, and by these stipulations the controverted issues have been considerably narrowed.

With the innovation of the Workmen's Compensation Act into our jurisprudence came new remedies and changed procedures. The act is sui generis and superseded and replaced many previously existing theories of personal injury damages arising out of common law and statutory actions. The terms and provisions of the Act attempt to make more certain the relief to the employee who comes under its influence. Pow v. Southern Const. Co., 235 Ala. 580, 180 So. 288; Gentry v. Swann Chemical Co., 234 Ala. 313, 174 So. 530; Pound v. Gaulding, 237 Ala. 387, 187 So. 468; 71 C.J., Sec. 9, p. 234.

The appellate courts of our State have often held that the Act must be liberally construed and all reasonable doubts must be resolved in favor of the employee. Mobile Liners v. McConnell, 220 Ala. 562, 126 So. 626; Boris Const. Co. v. Haywood, 214 Ala. 162, 106 So. 799.

It is well established and generally understood that the primary court's findings of facts in workmen compensation cases are conclusive and will not be disturbed by the appellate courts on review if there is any legal evidence to support the findings. Sloss-Sheffield Steel & Iron Co. v. Keefe, 217 Ala. 409, 116 So. 424; Republic Iron & Steel Co. v. Reed, 223 Ala. 617, 137 So. 673; Ford v. Crystal Laundry Co., 238 Ala. 187, 189 So. 730.

Insistence is made in the instant case that the court below erred in awarding compensation to plaintiff for disability because of a failure to comply with the provisions of Sec. 279(B) 2, Title 26, Code 1940.

The finding of facts set out in paragraph four of the lower court's decree is supported by the evidence. It remains for us to determine whether or not, under these facts, the plaintiff was obligated to furnish the affidavits which are required by said section.

Section 279(B) 1, Title 26, Code 1940, provides: "In all cases of temporary partial disability the compensation shall be fifty-five percent of the difference between the average weekly earnings of the workman at the time of the injury and the average weekly earnings he is able to earn in his partially disabled condition. This compensation shall be paid during the period of such disability * * *."

Section 279(B) 2, which immediately follows must be construed in connection with Section 279(B) 1, supra. The former is: "If the injured employee *who is receiving* such compensation for temporary partial disability should leave the employment of the employer by whom he was employed at the time of the accident *for which such compensation is being paid,* he shall, upon securing employment elsewhere, give to such former employer an affidavit in writing containing the name of his new employer, the place of employment, and the amount of wages being received at such new employment, and until he gives such affidavit, *the compensation for temporary partial disability shall cease.* The employer by whom such employee was employed at the time of the accident *for which such compensation is being paid* may also at any time demand of such employee additional affidavit in writing, containing the name of his employer, the place of his employment, and the amount of wages he is receiving, and if the employee, upon such demand, fails or refuses to make and furnish such affidavit, *his right to compensation for temporary partial disability shall cease until such affidavit is made and furnished."* (Emphasis ours.)

The reasons for the requirements to furnish the affidavits are apparent. They are safeguards to shield the employer against overpayment of compensation for partial disability benefits. The necessity for the protection is not immediate or

urgent unless the injured person is in fact receiving compensation from the employer by whom he was employed at the time of the accident—and this is the status when he receives wages elsewhere. It appears to us that the requirements to furnish affidavits to the defendant in the case at bar were without useful or helpful field of operation.

This seems to be the clear meaning and intent of the section in question, as we have undertaken to demonstrate by emphasizing portions thereof as we quoted above. We hold that the court below properly applied the law to the facts in this regard.

The next question presented is whether or not the trial court is bound by the wages earned by an employee after an injury in computing the compensation due the employee for a temporary partial disability in the absence of any special circumstances.

The conclusions reached by the nisi prius court on this inquiry may be found in paragraphs three, five, six and seven of his decree. The evidence clearly sustains this factual finding.

As indicated the plaintiff did in fact earn wages at various employments after his injury and during the period for which the court allowed him compensation for temporary partial disability. As indicated, also, the court concluded that "this fact would not be conclusive upon his earning ability based upon medical evidence, including the X-ray pictures showing that the second metatarsal bone had not knitted until Oct. 23, 1944."

■ It seems to be the generally accepted rule that the Workmen's Compensation Act fixes the liability as of the time of the injury and is referable to the employee's decreased physical efficiency to work, and wages received are not necessarily a fair criterion of a person's ability to labor. 71 C.J., Sec. 541, p. 823; London Guarantee & Accident Co. v. Industrial Comm., 70 Colo. 256, 199 P. 962.

"Disability usually means more than mere loss of earning power, the fact that an injured workman is employed at the same work and the same wages after the injury as before will not disentitle him to compensation, if his physical efficiency has been substantially impaired." Honnold on Workmen's Compensation, Section 155.

■ It is a matter of common knowledge, to which the courts will adhere, that abnormal business conditions sometimes command employment and induce high wages. It is equally well known that because of the exigencies of circumstances surrounding some people they feel that they are forced to employment even when to do so they must withstand the pains and inconveniences of physical handicap attributable to the injury.

■ It cannot be denied, based on reasonable and logical deduction, that the fact that a person does work and earn compensation for his labor after he has suffered an injury should become a consideration of evidential value in determining the extent of his disability. Agricola Furnace Co. v. Smith, 239 Ala. 488, 195 So. 743.

Our Supreme Court in Nashville Bridge Co. v. Honeycutt, 246 Ala. 319, 20 So.2d 591, 593, has, in our view of the opinion, committed itself favorably to the conclusions reached by the court below in the case at bar. In the Honeycutt case the plaintiff had earned "as much and more, since his injury, than before." Nevertheless, the Supreme Court affirmed the finding of the trial court in its decision that this fact would not be conclusive upon plaintiff's earning ability. See, also, Agricola Furnace Co. v. Smith, supra.

We find abundant authority in other jurisdictions to sustain this view:

In Burbage v. Lee, 87 N.J.L. 36, 93 A. 859, the New Jersey Supreme Court says: "The term 'disability' is not restricted to such disability as impairs present earning power at the particular occupation, but embraces any loss of physical function which detracts from the former efficiency of the body or its members in the ordinary pursuits of life."

The same court says, in De Zeng Standard Co. v. Pressey, 86 N.J.L. 469, 92 A. 278, 279: "The prosecutor's principal claim is that there cannot be a statutory 'disability' when it appears that the earnings of the petitioner had not been impaired. With this we cannot agree. It may well be that for a time an injured employe might be able to earn the same wages as before the accident; but, as we read the act, the

disability intended thereby is a disability due to a loss of a member, or part of a member, or a function, rather than the mere loss of earning power. Even if this were not so, it does not follow that the injured employé had not sustained a distinct loss of earning power in the near or not remote future and for which the award is intended to compensate."

The Kansas Supreme Court says: "The defendant argues that within two weeks after the injury the plaintiff was employed by the defendant at the same wages at which he had been employed previous to receiving the injury. * * * If this employment relieved the defendant of liability, then any employer can escape liability for compensation by retaining the injured employe and paying him wages, although he may not be able to do as good work after the injury as he did before. * * * The injured employé has a right to compensation for his injury. It does not matter that his employer continues to accept his services and pay him regular wages, unless that employment continues for the entire period for which compensation might be allowed. The act fixed the liability when the employé was injured. That liability can be discharged only in the manner directed by the statute." Gailey v. Peet Bros. Mfg. Co., 98 Kan. 53, 157 P. 431.

"Since the act provides that compensation for either permanent partial disability, 33 U.S.C.A. § 908 (c) (21), or for temporary partial disability, section 908 (e), shall be two-thirds of the difference between the injured employee's average weekly wages before the injury and his wage-earning capacity thereafter, it would seem that an employer who has continued to pay the employee full wages has already paid him more than he could have been required to pay under the act, and should not be required to pay more. But, if, by merely paying an employee full wages during the one-year period of limitation for filing a claim for compensation, an employer could possibly escape liability to pay any compensation thereafter, he would thus defeat the purpose of the act. Assuming that Dolan does suffer from partial disability as the Commissioner found, the fact that the defendant paid him full wages is not a bar to the award of compensation here involved." Luckenbach S. S. Co. v. Norton, etc., 3 Cir., 96 F.2d 764, 765. See, also, Candado Stevedoring Corp. v. Locke, 2 Cir., 63 F.2d 802; Consolidated Coal Co. of St. Louis v. Industrial Commission, 314 Ill. 526, 145 N.E. 675; Beal v. El Dorado Refining Co. et al., 132 Kan. 666, 296 P. 723.

We are urged to distinguish the instant case from the Honeycutt case because here we are dealing with temporary partial disability and in the Honeycutt case the question involved was permanent partial disability. As we read the authorities, the conclusions reached are not based on the type or nature of the disability, but rather the recognized construction that the Act contemplates a fixation of the disability as of the time of the injury, and in consideration of the various factors that enter into wage payments the amount a person earns cannot be made the sole basis of his physical ability. This interpretation appeals to logic and reason, and we are unable to make the distinction.

Our considered opinion is that the decree of the nisi prius court is sustained by the evidence and his calculations of the amounts due the plaintiff are authorized under the law.

The writ is, therefore, denied.

Writ denied.