## THE F. W. DODGE COMPANY *vs.* H. A. HUGHES COMPANY.

*Contract of Subscription to Reports as to Building Operations— Prompt Service Contemplated—Instructions.*

Plaintiff company was engaged in the business of furnishing information in regard to building and construction work, contemplated or in progress, within a certain territory. Defendant, who was a manufacturer and seller of slate and slate products used in buildings, agreed to pay a certain sum for reports to be furnished him by the plaintiff during one year, in regard to construction work in that territory where slate products might be required. After receiving reports for three months, defendant wrote to plaintiff discontinuing the service and refusing to receive any more, alleging that the reports supplied were inaccurate and tardy. In an action to recover the balance of the subscription price, *held,* that in construing the contract of subscription to the reports, the Court will consider the subject-matter and the object which the parties sought to accomplish; that it was essential that the information referred to should be promptly furnished to the defendant and that it should be reasonably accurate, so as to give defendant an opportunity to sell his materials for use in construction work.

*Held,* further, that a prayer offered by the plaintiff company instructing the jury that it was not bound to show that the information furnished by it to the defendant was in all respects accurate, if the information was such as the plaintiff

was able to obtain after making all reasonable efforts, was properly modified by the Court's adding thereto, that such information should have been furnished to the defendant promptly and regularly.

*Held,* further, that another prayer offered by the plaintiff is properly rejected when it instructed the jury that the plaintiff was entitled to recover if the information was regularly furnished to the defendant. That prayer ignores the obligation of the plaintiff to furnish the information promptly as well as regularly.

The trial Court is not bound to modify prayers submitted to it by counsel so as to make them correct statements of the law. The Court may, if it sees fit, simply refuse an incorrect prayer.

*Decided March 23rd, 1909.*

Appeal from the Circuit Court for Harford County (VAN BIBBER, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*Thos. F. Cadwalader* and *Stevens Thomson Mason,* for the appellant.

*Harry E. Karr,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

The F. W. Dodge Company, appellant, was engaged in the business of securing information in regard to building operations and construction enterprises contemplated or in progress and furnishing it to subscribers to its reports. This information was obtained through canvassers or agents, and reported to the office of the company. George C. Nagle, manager of the Philadelphia office, at the trial of this case in the Circuit Court for Harford County, testified that as manager

of that office he had charge of the business of the company in the territory including Southern Pennsylvania, Southern New Jersey, Delaware, Maryland and District of Columbia; that in that territory the company employed seventeen canvassers who were "charged with the duty of securing information of building operations and construction enterprises contemplated or in progress, and of transmitting such information to the Philadelphia office for the benefit of subscribers to the reports of the plaintiff; that the method employed by said canvassers is to make every effort to get information at first hand by means of personal visits to architects, contractors, and owners at their offices and places of business and by making personal inquiries of the parties themselves or the clerks or other members of their office force, if the parties are out; that information from trade journals is also resorted to in the matter of sealed proposals for enterprises, which information can not be got elsewhere; that as to other construction enterprises the information is always sought and obtained from people directly interested in the operations, as architects, contractors or owners or from the clerks or employees in charge of their offices; that the method of furnishing this information to subscribers is by mailing reports immediately upon receipt of such information by the Philadelphia or other central office. The reports are numbered and each number refers to a single operation, subsequent reports on the same job being lettered, the first one being *e. g.* number 101269 A, the next number 101269 B, and so on, each report specifying the condition of the work, upon the date on which it is issued; that the reports from the Philadelphia office were furnished at a rate from 50 to more than 200 per day during the time covered by the contract hereinafter set out, and were mailed to all subscribers in the aforesaid territory; that so far as witness knows these reports were substantially correct but witness could not guarantee that the informers were always truthful or that the reports were absolutely correct in all particulars; that the plaintiff company makes a specialty of reports upon enterprises

requiring roofing and structural slate products. That on February 16, in the year 1905, the defendant company through H. A. Hughes, its president, executed the following contract:

" 'The undersigned hereby employs the F. W. Dodge Company for the term of one year from Feb. 1st, 1905, to make inquiries, investigate and report such information as they are able to obtain as hereinafter specified pertaining to the Construction Enterprises contemplated or in progress throughout Eastern Ohio, West Va., Penna., So. N. J., Del., Md., and D. C. In consideration of said services, the undersigned hereby agrees to pay the said company four hundred dollars, per annum, payable quarterly, in advance, less discount of $50.00, making net rate $350.00.

### SPECIFICATIONS.

Construction where slate products may be required or specified (also slate, tile and shingle roofing). It is further expressly agreed by the undersigned:

1. That all information, whether printed, written or verbal, in answer to special inquiry or voluntarily furnished by the said company or its agents or employees, shall be held in strict confidence and for their business only.

2. The conditions of this contract, as set forth herein, embody all the agreements and understandings concerning it, made or had, with the said company, or its agents or employees acting in its behalf, either verbal or written.

This agreement cancels contract signed Jan. 19th, by H. A. Hughes.

H. A. HUGHES COMPANY,

H. A. HUGHES,

Calvert Bldg., Balto., Md.

Must be signed by either a proprietor, one of a firm, a corporation officer with his name and official title, or by a duly empowered attorney.

2-16 1905 (Nagle).' "

The H. A. Hughes Company, the appellee, paid on account of the $350 mentioned in the contract, $87.50 but refused to

pay the remaining $262.50 and this suit was brought to re-
cover it. George C. Nagle further testified that the appel-
lee's contract "covers the territory centering in the Pittsburg
office as well as that centering in the Philadelphia office;"
"that the reports were regularly forwarded from both said
offices to the defendant; first to defendant's address in the
Calvert Building, Baltimore, Md., then later to the defend-
ant's address at Delta P. O., Pennsylvania, upon receipt of a
notice from the post office that the defendant's address had
been changed to that point; that the said reports were regu-
larly mailed to the defendant company until March 6th,
1906;" "that during the time of the aforesaid contract the
plaintiff maintained one resident canvasser in Baltimore and
five in Philadelphia, there being seventeen altogether con-
nected with the office;" that the plaintiff, at the time of the
contract, maintained fifteen men in Pittsburg district, and
that the reports obtained by the canvassers are turned in each
night by mail to the central office of the territory and when
receievd are at once forwarded to subscribers."

H. A. Hughes testified in behalf of the appellee that he
"has been in the slate business for eleven years, during eight.
of which he represented the Peach Bottom Company; that
he started in business for himself in October, 1904, and or-
ganized the defendant company on February 1st, 1905;" that
he "executed the contract of February 16th, 1905, on behalf
of the defendant company and that he made use of the serv-
ices furnished in pursuance of the said contract until the
tenth or twentieth of April, 1905; that the reports were in-
accurate; that when reports of inaccurate character became
so numerous as to give the service that character the defend-
ant discontinued the service; that from February first to
April 19th, 1905, the defendant received one reply, from
parties communicated with in consequence of the plaintiff's
report, that led to business, and the value of said business was
but $38.00; that upon receipt of the reports or within a few
days thereafter the defendant company would communicate
by mail with contractors or owners named in said reports and

that the answers stated either that slate products were not required or that the contract had already been let, or that the building operation was abandoned, that the reports were sent to Delta after the defendant company moved its office there; that on or about April 20, 1905, owing to the unsatisfactory nature of the service the defendant wrote to the plaintiff refusing to receive any more of the reports, and discontinuing the service and from that time on the defendant refused to receive any of said reports; that the time defendant received said reports constituted one-quarter of the contract and defendant paid for one- quarterly installment."

This is substantially all the evidence in the record having any bearing on the questions presented by this appeal by the plaintiff below, from a judgment in its favor for $87.50.

The record contains only one exception and that is to the action of the Court below in rejecting plaintiff's first prayer and modifying its second prayer. Plaintiff's first prayer, and second prayer as offered and as modified, are as follows:

1. The plaintiff prays the Court to instruct the jury that if they find that the contract between plaintiff and defendant offered in evidence dated February 16th, 1905, was executed by the defendant and if they further find from the evidence that the plaintiff furnished to the defendant during the term of one year from February 1st, 1905, such information as it was able to obtain as to the matters specified in said contract, and that said information was regularly forwarded to the defendant's address by mail, then whether the defendant declined to receive the same or not, during said period, the verdict must be for the plaintiff even though the jury are of opinion that all the information so furnished was not in all respects accurate, provided they shall be satisfied from the evidence that the information actually forwarded to the defendant was obtained and forwarded by the plaintiff in good faith and after making every reasonable effort to obtain and verify the same.

2. The plaintiff prays the Court to instruct the jury that under the contract offered in evidence in this case the plaintiff

is not bound to show that the information furnished or forwarded by it to the defendant was in all respects accurate; provided the jury believe that the plaintiff did forward or furnish to the defendant such information as it was able to obtain after making in good faith all reasonable efforts to obtain the same.

2. *As Modified.* The plaintiff prays the Court to instruct the jury that under the contract offered in evidence in this case the plaintiff is not bound to show, that the information furnished or forwarded by it to the defendant was in all respects accurate; provided the jury believe that the plaintiff did forward or furnish promptly and regularly to the defendant such information as it was able to obtain after making in good faith all reasonable efforts to obtain the same.

In construing contracts Courts "look to the language employed, the subject-matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and in that view they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and of the correct application of the language to the things described." *Machen* v. *Hooper,* 73 Md. 342; *Varnum* v. *Thruston,* 17 Md. 470; *Roberts* v. *Bonaparte,* 73 Md. 191; *Brown* v. *Deford & Co.,* 83 Md. 311; 9 *Cyc.* 587.

In the case of *B. & O. R. R. Co.* v. *Brydon.* 65 Md. 198, the Court said: "We must consider the subject-matter of the agreement and the knowledge of it which the parties possessed; the objects which they sought to accomplish and the inducements which they had for dealing with each other as they did."

As we have said, the appellant was engaged in the business of securing and furnishing to its subscribers information in regard to construction enterprises contemplated or in progress, and the appellee was a manufacturer and seller of slate and slate products used in construction. The undertaking of the appellant was to furnish, and the object of the appellee was to

obtain, such information as was thought would enable the appellee to sell its slate or slate products. In order to accomplish this undertaking of the appellant and object of the appellee it was as essential that the information when obtained should be promptly furnished to the appellee, as that it should be reasonably accurate. Reports of construction enterprises contemplated or in progress unless promptly received would not afford the subscribers an opportunity to sell material to be used in such construction. It was, therefore, the duty of the appellant not only to make "every reasonable effort" to secure accurate information, but when so obtained to promptly forward it to the appellee in order that he might secure the benefits of it contemplated by the parties to the agreement. A failure to make such prompt delivery would practically defeat the purpose for which the information was obtained. The appellant, by its course of business, recognized the importance of immediate delivery to its subscribers of the information secured. Witness Nagle testified that "the method of furnishing this information to subscribers is by mailing reports *immediately* upon receipt of such information" at the central office, and, further, that "the reports obtained by the canvassers are turned in each night by mail to the central office of the territory and when received are *at once* forwarded to subscribers."

Considering "the objects which they sought to accomplish and the inducements which they had for dealing with each other as they did," the obvious meaning of the agreement was that the appellant was to promptly forward to the appellee the information it undertook to furnish, and there was accordingly no error in the modification of plaintiff's second prayer so as to require the jury to find that the information sent to the defendant was forwarded "promptly and regularly."

Plaintiff's first prayer, while it required the jury to find that the information furnished was "regularly" forwarded to the defendant, ignored the duty of the plaintiff to forward the reports promptly, and for that reason was defective. It is true that "regularly" may mean "in due order or time," but it is generally understood as meaning in compliance with some

prescribed or adopted rule or order, while "promptly," in the sense in which it was employed in the modified prayer and was doubtless understood by the jury, meant without unnecessary delay.   *Webster's International Dictionary; Imperial Dictionary; Century Dictionary and Ency.*

As plaintiff's first prayer did not require the jury to find that the reports were *promptly* forwarded to the defendant, it was properly rejected.   In the case of *Insurance Co.* v. *Bathhurst,* 5 G. & J. 159, the Court, on page 225, said: "Courts of justice are not bound to modify or fashion the instructions moved for by counsel, so as to bring them within the rules of law.   *   *   *   They may, if they see fit, content themselves with a simple refusal of any prayer not sanctioned by the rules of law."   *Doyle* v. *Comm'rs. of Balt. Co.,* 12 G. & J. 484; *Birney* v. *Telegraph Co.,* 18 Md. 357; *Kettlewell* v. *Peters,* 23 Md. 316; *Hutzler* v. *Lord,* 64 Md. 534.

Finding no error in the rejection of plaintiff's first prayer or in the modification of plaintiff's second prayer, the judgment appealed from will be affirmed.

*Judgment affirmed with costs.*