## COMPTROLLER OF TREASURY *v.* M. E. ROCKHILL, INC.

[No. 173, October Term, 1953.]

228

*Decided July 22, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE and COLLINS, JJ.

*Charles McC. Mathias, Jr., Assistant Attorney General,* with whom was *Edward D. E. Rollins, Attorney General,* on the brief, for the appellant.

No brief and no appearance for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

The Comptroller of the Treasury, acting through his Retail Sales Tax Division, appellant, contended here that M. E. Rockhill, Inc., appellee, a corporation engaged in the development and management of real estate in Calvert County, is liable for the Maryland sales tax on rentals of cottages at Long Beach, a summer resort along the Chesapeake Bay.

The Retail Sales Tax Act, Code 1951, art. 81, sec. 321, provides that for the privilege of selling certain tangible personal property at retail and for the privilege of dis-

pensing certain selected services defined as sales at retail by Section 320(f), a vendor shall collect from the purchaser a tax on the price of each separate retail sale made in this State, the tax to be computed as follows: (a) on each sale where the price is from 51 cents to $1, both inclusive, 2 cents; (b) on each 50 cents of price or fraction thereof in excess of $1, 1 cent.

Section 320(f) specifies five classes of services which are included within the term "sale at retail." The fifth class is described as follows:

"(5) The sale or charges for any room or rooms, lodgings, or accommodations furnished by any hotel, inn, tourist camp, tourist cabin or any other place in which rooms, lodgings or accommodations are regularly furnished to the public for a consideration."

The Retail Sales Tax Act took effect on July 1, 1947. The State Comptroller thereupon adopted various rules and regulations to guide in the enforcement of the Act. He interpreted the tax on the sale or charges for any room or rooms, lodgings, or accommodations, Laws 1947, ch. 281, sec. 259, to apply to transient guests, not to permanent tenants. This interpretation is included in Rule 61 of the Retail Sales and Use Tax Rules and Regulations, entitled "Room Rentals," which reads in part as follows:

"Persons who regularly furnish living accommodations to transient guests for a consideration must collect and pay to the Comptroller a sales tax on the receipts therefrom. If there are guests in any such establishments who rent living accommodations on a monthly basis or who maintain a permanent residence therein, the sales tax shall not apply to the receipts from such permanent guests. However all rentals in resort areas for terms of four months or less are subject to the sales tax."

The controversy in this case is over an assessment made by the Retail Sales Tax Division in 1951 on rentals

of cottages in the period of three and a half years from July 1, 1947, to December 30, 1950. That Division found that the appellee had rented the cottages for the owners for terms of less than four months, and made an assessment against it of $155.97, with interest thereon of $15.60, making a total of $171.57.

The statute authorizes any taxpayer to apply to the Comptroller for revision of an assessment. When such an application is made, the Comptroller shall promptly act thereon and shall notify the taxpayer of his action. Thereafter the taxpayer may request a formal hearing before the Comptroller. The Comptroller shall thereupon grant a hearing, and after the hearing he shall make such revision of the assessment as he deems just and shall notify the taxpayer of his determination. The taxpayer may appeal from the final determination of the Comptroller to the Circuit Court for the County in which the taxpayer regularly conducts his business, or to the Baltimore City Court if the taxpayer regularly conducts his business in Baltimore City. Such appeal shall be limited to questions of law only, but the Comptroller shall file in the Court a certified copy of the record of proceedings held before him. The taxpayer, or the Attorney General on behalf of the State, or the Comptroller may appeal from the final order of the Court to the Court of Appeals of Maryland. Code 1951, art. 81, secs. 347, 348.

The appellee applied to the Comptroller for abatement of the assessment, but its application was denied. Thereafter it requested a hearing, and the Director of the Retail Sales Tax Division held a hearing on June 17, 1952. That officer, as duly authorized agent for the Comptroller, held that the accommodations furnished by the appellee at Long Beach were regularly furnished to the public in a resort area, and therefore he refused to make any revision of the assessment. The appellee appealed from that decision to the Circuit Court for Calvert County. That Court entered an order setting

aside the assessment. The Retail Sales Tax Division then appealed from the Court's order.

First, it was contended by the appellee that Long Beach has no public bathing beach and no public amusements, and hence none of the "honky-tonk atmosphere" of resorts. The Court, however, noted that only 10 per cent of the owners of cottages at Long Beach live there all the year round, and that 90 per cent come there in summer for rest and recreation. Accordingly the Court found Long Beach to be a resort area.

The commonly accepted definition of a "resort" is a haunt or place of frequent assembly. *In re Sic*, 73 Cal. 142, 14 P. 405, 410; *United States ex rel. Dobra v. Lindsey*, 51 F. 2d 14. It was held in Illinois, for example, that a street or alley, not used as a driveway, which adjoined a brewery, and where from six to twelve persons were in the habit of congregating daily for the purpose of drinking beer, was a place of public resort. *Bandalow v. People*, 90 Ill. 218, 220. But the definition of the term "resort" includes not only a place frequented by many people, but also a place resorted to by an individual. Thus the lexicographers sanction such illustrations as "The forest is my resort," and "Newport is a fashionable resort."

Evidently the Comptroller, in using the term "resort area" in Rule 61, contemplated public resort area. It is undeniable that the popular conception of a "resort" is a place to which crowds of people go for their vacations. A summer resort is generally thought of as a popular place of entertainment or recreation. It is common knowledge, however, that recreation may be obtained without going to a theater or participating in some public amusement. Recreation denotes refreshment of body or mind after toil. It may come from any pleasant and diverting exercise or employment. There can be no doubt that the owners of the cottages at Long Beach have been attracted there by its location on the Chesapeake, which affords opportunities for recreation. One of the available recreations is bathing. On the

beach is a bathhouse for residents and their guests. Another recreation is fishing. There are docking facilities in the harbor for rowboats and sailboats. For these reasons we are of the opinion that, even though Long Beach has no public beach and no public amusements, and hence no "honky-tonk atmosphere," nevertheless it may reasonably be considered a resort area.

Secondly, the appellee contended that the tenancies of the cottages at Long Beach were not "regularly furnished to the public," and therefore they were not sales at retail within the scope of Section 320(f) (5). The Court below did not accept that contention, but set aside the assessment on the ground that the Comptroller had no right to discriminate, as he attempted to do in Rule 61, between rentals in resort areas and rentals in other areas of the State.

We agree that the tenancies were not subject to the sales tax. But we reach this decision, not on the ground of discrimination between resort areas and non-resort areas, as it is unnecessary to discuss that question here, but on the ground that the tenancies were not "regularly furnished to the public."

The sales tax is an excise tax imposed by the Legislature in the exercise of the police power of the State. The Legislature, in Section 361 of the Retail Sales Tax Act, authorized the Comptroller to adopt such rules and regulations as he shall deem necessary to carry out the provisions of the Act and to define any terms used therein. It is universally recognized that it would be impossible for the Legislature to deal directly with the multitude of details in the complex conditions upon which it legislates, and so it has become customary for the Legislature to delegate to each administrative agency the power to make rules and regulations to carry legislation into effect. Unless an administrative officer or department is permitted to make reasonable rules and regulations, it would be impossible in many instances to apply and enforce the legislative enactments, and the good to be accomplished would be entirely lost. *United*

*States v. Grimaud,* 220 U. S. 506, 31 S. Ct. 480, 483, 55 L. Ed. 563; *Financial Aid Corporation v. Wallace,* 216 Ind. 114, 23 N. E. 2d 472, 475, 125 A. L. R. 736.

However, rules and regulations adopted by an administrative agency, to be valid, must be reasonable and consistent with the letter and policy of the statute under which the agency acts. *International Ry. Co. v. Davidson,* 257 U. S. 506, 42 S. Ct. 179, 182, 66 L. Ed. 341; *Fawcus Machine Co. v. United States,* 282 U. S. 375, 51 S. Ct. 144, 75 L. Ed. 397; *Panama Refining Co. v. Ryan,* 293 U. S. 388, 55 S. Ct. 241, 252, 79 L. Ed. 446; *Commissioner of Internal Revenue v. South Texas Lumber Co.,* 333 U. S. 496, 68 S. Ct. 695, 698, 92 L. Ed. 831.

We have adopted the rule that the construction placed upon a statute by administrative officials soon after its enactment should not be disregarded except for the strongest and most cogent reasons. *Smith v. Higinbothom,* 187 Md. 115, 132, 133, 48 A. 2d 754. We have recognized that the interpretation placed by the State Comptroller upon the Retail Sales Tax Act is entitled to great weight as an administrative interpretation acquiesced in by the Legislature. *McShain v. Comptroller,* 202 Md. 68, 95 A. 2d 473. We must emphasize, however, that such an interpretation is not binding upon the courts.

In *United States v. Dickson,* 15 Pet. 141, 161, 162, 10 L. Ed. 689, 697, where a construction placed by the Treasury Department upon an Act of Congress was considered by the Supreme Court of the United States, Justice Story, delivering the opinion of the Court, forcefully stated:

> "The construction so given by the Treasury Department to any law affecting its arrangements and concerns, is certainly entitled to great respect. Still, however, if it is not in conformity to the true intendment and provisions of the law, it cannot be permitted to conclude the judgment of a Court of Justice. The construction given to the laws by any department of the executive government, is neces-

sarily ex parte * * *. But, it is not to be forgotten, that ours is a government of laws, and not of men; and that the Judicial Department has imposed upon it, by the Constitution, the solemn duty to interpret the laws, in the last resort; and however disagreeable that duty may be, in cases where its own judgment shall differ from that of other high functionaries, it is not at liberty to surrender, or to waive it."

There can be no question that an administrative official charged with the enforcement of a sales tax statute has no authority to promulgate a rule for the computation of a tax so as to impose the tax upon a transaction which is not taxable under the provisions of the statute. No tax can be lawfully imposed except upon express authority vested in the official who seeks to impose it. In interpreting a tax statute, the court must not extend its provisions by implication beyond the clear import of the language employed. Such a statute, in case of doubt as to its scope, should be construed most strongly in favor of the citizen and against the State. *Gould v. Gould*, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211; *Magruder v. Hospelhorn*, 173 Md. 62, 72, 194 A. 839; *Maryland Unemployment Compensation Board v. Albrecht*, 183 Md. 87, 92, 36 A. 2d 666.

There are several different classes of administrative rules. Some are legislative rules, which receive statutory force upon going into effect. Others are interpretative rules, which only interpret the statute to guide the administrative agency in the performance of its duties until directed otherwise by decisions of the courts. Some rules are merely rules of procedure. Others implement the statute by stating the policy by which the agency will be governed in the exercise of its authority.

The Comptroller evidently intended Rule 61 to serve as an interpretative rule to guide the Retail Sales Tax Division in enforcing Section 320 (f) (5) of the Retail Sales Tax Act. Even assuming that the proviso in Rule 61 that "all rentals in resort areas for terms of four months or less are subject to the sales tax" may be valid

in most instances, that proviso cannot be applied where the property owner does not regularly furnish rooms, lodgings, or accommodations to the public, because the rule would then conflict with the statute, which imposes the sales tax on the sale or charges for any room or rooms, lodgings, or accommodations only when they are furnished by a hotel, inn, tourist camp, tourist cabin or other place in which they are regularly furnished to the public.

The evidence in this case shows that the appellee has never rented any of its property. M. E. Rockhill, president of the appellee, described the development of the resort as follows:

> "Long Beach was purchased as a unit by myself as an individual as the producer, and later it was turned into a corporation for the purpose of developing and selling real property. As a means to encourage the sale of real estate, vacant land, we built some houses. They were built for sale. Since that time all those places have been assumed by private owners, and we have built many other houses to order. We are not alone in construction activities at Long Beach, as many other contractors operate on the same basis on which we operate. However, none of the houses mentioned, either in the earliest days of this operation or up to the present time, have ever been offered for rent to anyone, publicly or otherwise. No property held by the company actually has ever been offered for rent."

The evidence also indicates that none of the cottages at Long Beach had ever been regularly offered for rent to the public. The word "regularly" means in a regular manner or in accordance with some prescribed or adopted rule or order. It implies method, continuity and consistency, and excludes the idea of incidental, occasional or casual service or use. *F. W. Dodge Co. v. H. A. Hughes Co.*, 110 Md. 374, 381, 382, 72 A. 1036; *Carter v. Reardon-Smith Line*, 148 Md. 545, 559, 129 A. 839.

According to the evidence in this case, there were 135 cottages at Long Beach, 20 of which were occupied by the owners all the year round, and 115 owned by persons who lived elsewhere during the greater part of the year. It was the occasional rentals of some òf these 115 cottages, usually during the summer months, on which the Comptroller based the assessment. The cottages were rented only on those occasions when the owners did not want to use them. Mr. Rockhill testified that the appellee rented only nine cottages in 1947, three in 1948, six in 1949, and ten in 1950.

Indeed, it does not appear that any of the cottages were ever offered for rent to the public at all, regularly or irregularly. Mr. Rockhill admitted that he had advertised for tenants from time to time on behalf of the owners, but he explained that he carefully investigated all applicants in order to "screen" them and select only those whose recommendations made them acceptable to the community. Mr. Rockhill further testified that the beach has never been open to the public, but is owned by the appellee, and the property owners and their invited guests are granted a right of way to the beach. The docking facilities are also owned by the appellee, and the property owners are required to make monthly or annual payments for docking privileges.

Mr. Rockhill testified that only one cottage had ever been built for the purpose of being rented during the entire history of the resort. Even that cottage was designed for the exclusive use of officers in the Army and Air Force. Moreover, it was leased for terms of more than four months, so that the lessees were not transient guests under the Comptroller's interpretation of the statute.

As it appears that the cottage accommodations, on which the Comptroller based the assessment in this case, were not regularly furnished to the public, and therefore were not subject to the sales tax, the order setting aside the assessment must be affirmed.

*Order affirmed, with costs.*