REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1031

September Term, 2013

_____

MARQUIS McCLURE,

v.

MONTGOMERY COUNTY PLANNING
BOARD OF THE MARYLAND-NATIONAL
CAPITAL PARK AND PLANNING
COMMISSION.

_____

Eyler, Deborah S.,
Reed,
Sonner, Andrew L.,
        (Retired, Specially Assigned),

JJ.

_____

Opinion by Reed, J.
_____

Filed: December 2, 2014

Few cases inflame such deep passions as a dispute involving individual property rights. The belief that fundamental concepts of liberty entailed strong property rights informed and influenced the Founders as they undertook the epochal task of drafting our Constitution. *See* Sharon A. Rose, Kelo v. City of New London*: A Perspective on Economic Freedoms*, 40 U.C. DAVIS L. REV. 1997, 2002 (2007). Infringers of these cherished rights should beware for "nothing is better calculated to arouse the evil passions of men than a wanton and unredressed invasion of their . . . property rights." *Cameron v. Chi., Milwaukee & St. Paul Ry. Co.*, 65 N.W. 652, 655 (Minn. 1896).

Appellant, Marquis McClure, seeks our review of the decision of the Circuit Court for Montgomery County in a land use case. Mr. McClure sought judicial review in the circuit court of an order issued by appellee, the Montgomery County Planning Board (the "Planning Board") of the Maryland-National Capital Park and Planning Commission ("MNCPPC"), which imposed a civil administrative penalty on Mr. McClure and mandated he take remedial actions to correct his violations of a forest conservation easement on his property.

Appellant raises three questions for our consideration. Based on the circuit court's opinion on his petition for judicial review, however, we rephrase and reorder those questions as follows:[1]

---

[1] Appellant originally presented the following three questions in his brief:

 I. Did the Planning Board err in conducting an administrative enforcement hearing on the issues raised in the notice of violation?

 II. Did the Planning Board err in holding that the easement agreement in the instant case was effective to encumber the title of Mr. McClure at the time he took title to the subject property?

1

I. Did the Planning Board err where it found that the forest conservation easement encumbered appellant's property and appellant had actual and constructive notice of that easement?

II. Did the Planning Board err where it interpreted its statute to find an enforceable forest conservation easement and then acted according to that interpretation?

III. Did the Planning Board err where it found it had the jurisdiction and authority to enforce the forest conservation easement?

We answer these questions in the negative. Accordingly, we affirm the judgment of the circuit court and shall explain.

### FACTUAL AND PROCEDURAL BACKGROUND

In March 2000, Mr. McClure entered into a contract of sale for a vacant recorded lot in the Fairhill subdivision development ("Fairhill") in Laytonsville, Maryland. The Fairhill Partners Limited Partnership (the "Fairhill Partners"), which is a venture arm of the Bozzuto Group ("Bozzuto"), was the developer of the Fairhill subdivision and was selling the lots. Fairhill Partners and Mr. McClure contracted for the purchase of Lot 7, a 5.21-acre parcel of land within the subdivision.

Fairhill's intersection with Montgomery County's forest conservation laws dates back to 1992. The Fairhill subdivision was originally approved by the Planning Board in 1980 and Preliminary Plan 1-74019R was recorded at Plat 13190 in the land records of Montgomery County. This plan created 19 outlots and 27 lots, which included Lot 7.[2] The

---

III. Did the Planning Board err in asserting jurisdiction and the scope of the administrative fine and corrective actions it imposed upon the appellant?

[2]

We think an explanation of the difference between a 'lot' and an 'outlot' will be helpful to our discussion

Planning Board approved Preliminary Plan 1-90057 in 1990, which would have converted four of the subdivision's outlots to lots. That plan expired, however, because the lots were not recorded. In 1995, Bozzuto approached MNCPPC regarding the development of the 27 extant lots and the potential conversion of up to 5 outlots.

In the intervening years between the approval of Preliminary Plan 1-90057 and Bozzuto's initial discussions with MNCPPC regarding its potential development of Fairhill, the Montgomery County Forest Conservation Law ("MCFCL"), Montgomery Cnty., Md., Code §§ 22A-1 *et seq.* (2004), was enacted. The primary reason for Bozzuto's inquiry of MNCPPC regarding Fairhill was because it wanted to know whether Fairhill was subject to the forest conservation requirements of the MCFCL. MNCPPC officials explained the 27 lots would be subject to the new conservation requirements if a new subdivision plan was approved. Bozzuto, via its Fairhill Partners venture, submitted and received approval of Preliminary Plan 1-96071 from the Planning Board. Approval of the preliminary plan was contingent on the recordation of a final record plat that

at this juncture.

> The Montgomery County Zoning Ordinance provides a general definition of a 'lot': "A lot is a contiguous area of land that is described by a plat recorded in the land records for which a building permit can be issued." Montgomery County Code § 59-4 § 4.1.7(A)(3). Chapter 22A of the Montgomery County Code provides a more detailed definition of 'lot' that is relevant to the present dispute: "[A] tract of land, the boundaries of which have been established as a result of a deed or previous subdivision of a larger parcel, and which will not be the subject of further subdivision, as defined under Section 50-1[, the Definitions section of the Subdivision of Land chapter], without an approved forest stand delineation and forest conservation plan." *Id.* § 22A-3.

> Remarkably, neither the Maryland Code nor the Montgomery County Code defines 'outlot'. The jurisdiction closest to Mr. McClure's property that does provide a definition of 'outlot' is the City of Gaithersburg. According to the City's municipal code, an 'outlot' is "[a] parcel of land which is shown on a subdivision or record plat but which is not to be occupied by a building or otherwise considered a buildable lot." City of Gaithersburg Code of Ordinances § 20-4 (2014). We think this definition of 'outlot' is applicable to the present case because the language in the City's Code of Ordinances that sets forth outlot conversion procedures includes several verbatim provisions from the comparable section of the Montgomery County Code. *Compare id.* § 20-34(a)(2) *with* Montgomery County Code § 50-35A(a)(2). We do not think that the City intended its use of 'outlot' to be markedly different from the way it is used by Montgomery County.

3

delineated a forest conservation easement on the lots. A final plat was never completed and recorded, however, nor was the forest conservation easement ("FCE") specifically marked on the plats for the 27 lots, including Lot 7.

In lieu of recording an updated plat to reflect the FCE, Fairhill Partners executed a Conservation Easement Agreement (the "Agreement"). The Agreement was recorded in the County's land records on March 13, 1998. Pursuant to its terms, Fairhill Partners was required to refer specifically to the FCE in any instrument that would convey an interest in property.

Mr. McClure and Fairhill Partners settled on Lot 7 in May 2000. The deed Mr. McClure received itself contained no specific reference to the FCE—only a generic clause stating the deed was subject to easements of record.[3] Further, in his testimony before the Planning Board, Mr. McClure stated that no title insurance documents related to the settlement of the property contained any mention of the FCE.

The contract of sale, however, contained clear references to the FCE. Mr. McClure acknowledged the existence of the FCE as demonstrated by his signature. The contract also included a map demonstrating the FCE's location on the lot.

After closing on his property in 2000, Mr. McClure did what many Marylanders do with land and constructed a house. He also built a deck, mowed his lawn, and even grazed horses. Seeking to fully embrace an agrarian lifestyle, in May 2005, he sought to build a barn and a fence and received permits to that effect. During this period of

---

[3] The language of the deed between Fairhill Partners and Mr. McClure states explicitly that Mr. McClure was taking Lot 7 "SUBJECT to covenants, *easements*, and restrictions of record." (emphasis added).

4

construction, he learned of the specific boundaries of the FCE. It was also during this period that MNCPPC had received a complaint regarding unauthorized clearing and grading activity in the FCE.

Mr. McClure and officials from the MNCPPC held several meetings over the course of the next year regarding the activities on his property and the FCE. In January 2009, the MNCPPC responded to a complaint regarding vehicles and trailers parked in the FCE boundaries. A notice of violation was issued by MNCPPC on January 7, 2009, to which Mr. McClure never responded. He was issued a civil citation on February 24, 2009. He never paid the citation nor took remedial action.

The Planning Board proceeded with its administrative enforcement of the FCE and issued a Notice of Hearing. The Board alleged in the Notice that Mr. McClure violated the FCE by: 1) cutting grass; 2) installing asphalt and stone; 3) storing and parking trailers; 4) grazing horses; and 5) installing a fence without prior approval. Two hearings were held on January 11 and 25, 2010, where the Planning Board heard testimony and received evidence regarding the alleged violations of the FCE.

More than two years later, on April 10, 2012, the Planning Board issued an opinion and order in which it found Mr. McClure responsible for four of the five asserted violations of the FCE. It imposed a $102,378.80 civil penalty and mandated Mr. McClure take corrective actions, specifically: tree planting on and off-site; limited amendment of the preliminary plan and recordation of a new plat reflecting the FCE; installations of posts and signage making clear the easement's boundaries; submission to a land survey

5

identifying impervious surfaces within the FCE; and removal of said impervious surfaces within the FCE.

Mr. McClure sought judicial review from the circuit court of the Planning Board's decision on May 9, 2012. Mr. McClure attacked the Planning Board's decision on several grounds. He argued the Planning Board lacked the jurisdiction and authority to administratively enforce the FCE. He further contended the FCE was not effective because it was not recorded by reference to his plat number in the County land records. Additionally, he averred the Agreement was not indexed according to his lot's parcel identifier, making the FCE invalid pursuant to § 3-501(a)(2) of the Real Property Article ("RP") of the Maryland Code. Finally, he argued the Planning Board's delay in issuing the opinion was arbitrary and capricious, and the civil penalty was excessive.

A hearing was held on November 28, 2012, and the circuit court issued an opinion and order on July 8, 2013. The circuit court disagreed with Mr. McClure as to the authority and jurisdiction of the Planning Board to enforce the FCE, and further determined the FCE was effective and encumbered his property. Moreover, although the circuit court determined that the delay in the issuance of the opinion was not arbitrary and capricious, the court found otherwise as to the civil penalty and corrective action mandated. The circuit court reversed the Planning Board's order and remanded the case back to the agency with orders to consider the required standards in determining the penalty and corrective action.

On August 1, 2013, Mr. McClure timely noted his appeal to this Court.

Discussion

6

A. Parties' Contentions

Mr. McClure reiterates a number of the arguments he made before the circuit court. He again attacks the validity of the FCE, arguing that there is a lack of substantial evidence in the record to demonstrate the Agreement was properly indexed and, therefore, that he had no actual or constructive notice of the easement. He additionally challenges the Planning Board's jurisdiction and authority to enforce the FCE. He explains that there was no enforceable easement pursuant to the MCFCL, and that the statute does not grant the Planning Board the authority to impose the civil penalty and mandate corrective action. Finally, Mr. McClure offers a rephrased argument on appeal, stating that because the Planning Board did not follow its own regulations, which required the FCE to be shown on the record plat at the time he purchased his property, the Planning Board took unauthorized action pursuant to *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (the "*Accardi* Doctrine").

The Planning Board disagrees on all fronts. First, the Board contends Mr. McClure is bound by the FCE because he purchased his property with actual and constructive notice of the easement, and that the Real Property Article does not automatically invalidate a non-indexed instrument. The Board also explains that the County Code does grant it the authority to enforce unplatted easements, as well as to issue administrative penalties and order corrective action. Finally, the Board argues that Mr. McClure's *Accardi* Doctrine argument is not preserved for our review. In the event that it is preserved, however, the Board contends the doctrine does not apply to the present case

because re-platting of pre-existing lots was not required to demonstrate new forest conservation easements.

## B. Standard of Review

This case comes to us on appeal from an order of a circuit court regarding a petition for the judicial review of a decision of an administrative agency. Our standard of review for such cases is well-established.

When we review the decision of an administrative agency or tribunal, "we [assume] the same posture as the circuit court . . . and limit our review to the agency's decision." *Anderson v. Gen. Cas. Ins. Co.*, 402 Md. 236, 244 (2007) (internal citation omitted). The circuit court's decision acts as a lens for review of the agency's decision, or in other words, "we look not *at* the circuit court decision but *through* it." *Emps. Ret. Sys. of Balt. Cnty. v. Brown*, 186 Md. App. 293, 310 (2009), *cert. denied*, 410 Md. 560 (2009) (emphasis in original) (internal citations omitted).

We "review the agency's decision in the light most favorable to the agency" because it is "prima facie correct" and entitled to a "presumption of validity." *Anderson v. Dep't of Pub. Safety & Corr. Servs.*, 330 Md. 187, 213 (1993) (internal citation omitted).

The overarching goal of judicial review of agency decisions is to determine whether the agency's decision was made "in accordance with the law or whether it is arbitrary, illegal, and capricious." *Long Green Valley Ass'n v. Prigel Family Creamery*, 206 Md. App. 264, 274 (2012) (internal citation omitted). With regard to the agency's factual findings, we do not disturb the agency's decision if those findings are supported by substantial evidence. *See id.* (internal citations omitted). Substantial evidence is

defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Catonsville Nursing Home, Inc. v. Loveman*, 349 Md. 560, 569 (1998) (internal citations omitted) (internal quotation marks omitted). We are not bound, however, to affirm those agency decisions based upon errors of law and may reverse administrative decisions containing such errors. *Id.*

### C. Analysis

### *(i) Efficacy of the FCE*

Mr. McClure seeks to invalidate the Planning Board's remedial actions by arguing the FCE is not binding upon him because it was not properly indexed in the Montgomery County Land Records as required by the Real Property Article of the Maryland Code, and he did not receive actual or constructive notice of the FCE. We disagree with Mr. McClure's statutory interpretations and determine there was substantial evidence in the record that he received both actual and constructive notice of the easement.

Mr. McClure's contentions are undermined by the evidence in the record that well-supports the existence of a recorded easement on his property. The clerk of the circuit court certified that the Agreement was recorded on March 13, 1998, at 11:52 AM in Liber 15627, Folio 293–330. Schedule A to the Agreement sets forth with great specificity the boundaries of the FCE. Part 3 of the FCE, described at Folio numbers 310–312, states that this part of the easement encumbers a section of Mr. McClure's lot, Lot 7. Part 5 of the FCE is described at Folio numbers 314–315, and similarly encumbers part of Lot 7. Then, at Folio number 315, Part 6 of the FCE is described as including a section of Lot 7. At Folio number 326, a graphical representation of Lot 7 is reproduced and shows the

9

placement of the FCE on Mr. McClure's property. Part 5 of the FCE covers a small, southwesterly segment of Lot 7, and Part 6 similarly covers a small segment in the northwest area of the property. Part 3 of the FCE, however, covers the largest area of Lot 7, a sweeping segment that includes the center and northeasterly corner of the lot. Without a doubt, there were very specific descriptions of the FCE on Lot 7 recorded in the County's land records.

These detailed descriptions in the recorded Agreement amount to substantial evidence of the existence of an FCE on Lot 7. This evidence, along with plain language of the Real Property Article, therefore, creates barriers to our acceptance of Mr. McClure's arguments. First, RP § 3-501 does not, as Mr. McClure contends, create a *sui generis* recording system for Montgomery County. The general rules for recordation across the entire state—including Montgomery County—are set forth in RP § 3-101. *See, e.g.*, *Washington Mut. Bank v. Homan*, 186 Md. App. 372, 392 (2009) (citing § 3-101 in support of basic statewide recording principles applicable to a property dispute in Montgomery County). We think § 3-101 is clear on account of its simplicity: "Except as otherwise provided in this section, no . . . limitation of use . . . may pass or take effect unless the deed granting it is executed and recorded." RP § 3-101(a). Moreover, "[s]ubsection (a) . . . does not limit any other method of transferring or creating . . . a[] limitation which is permitted by the law of the State except to the extent required by law." *Id.* § 3-101(b). Section 3-101 sets forth the recording requirements across the State for the effectiveness for, among other things, an easement.

Unlike § 3-101, which is devoted to requirements for the *effectiveness* or *transfer* of interests in property, § 3-501 is narrowly focused on the *indexing* of instruments in Montgomery County. Subsection (a) explains the responsibilities of the clerk for the Circuit Court for Montgomery County, which are to "[a]ssign to each parcel of real property in the county an individual parcel identifier, numerical or otherwise; and [r]ecord by parcel identifier in a parcel index *any instrument or reference to an instrument* presented for recording after June 30, 1981." RP § 3-501(a) (emphasis added). That subsection further provides that "[i]nformation recorded by parcel identifier in a parcel index shall be the legal record of interests affecting any parcel." *Id.* § 3-501(a)(2). Subsection (b) further describes the technical requirements for recording instruments in Montgomery County, as well as exceptions to the provisions of that subsection.[4] Notably,

---

[4] Subsection (b) provides in relevant part:

> (b)(1)(i) Except as provided by subparagraph (ii) of this paragraph, all interests created after June 30, 1981 that are enforceable against real property, shall be recorded in the land records by serial number (liber or folio, or other number as the Clerk determines) and by parcel identifier.
>
>     (ii) The provisions of this subsection do not apply to:
>         1. Contracts for conveyance of real property;
>         2. Leases not required to be recorded under § 3-101(c) or (d) of this title;
>         3. Liens of judgment created by § 11-402 of the Courts and Judicial Proceedings Article, and other actions in law or equity which constitute a claim against or encumbrance upon the property;
>         4. Liens arising from nonpayment of real property taxes; and
>         5. Claims of the United States not subjected by federal law to the recording requirements of this State.

11

subsection (b)(3) states that "[a]n instrument *is not rendered invalid by failure to comply with the requirements of this section.*" (emphasis added). These provisions, therefore, are not conditions to validity but, rather, how these enforceable interests must be *organized* by the clerk. Critically, the statute explains in no uncertain terms that the validity of an instrument is not affected by non-compliance with the requirements of the section.

In view of the two separate purposes of §§ 3-101 and 3-501, Mr. McClure cannot claim the failure to record the FCE on the specific parcel identifier for Lot 7 renders the easement invalid. For, "[a]n instrument is not rendered invalid" where an easement is not recorded according to the requirements of § 3-501. And, to be sure, the FCE was certainly recorded in the County's land records as discussed *supra*.

It is this fact of recordation that also persuades us that Mr. McClure received both actual and constructive notice of the FCE. Although Mr. McClure wishes to play the ostrich and secrete away his head from the signatures on his deed and contract of sale, he will find no solace in the sands. An easement binds any person who acquires title to land with actual or constructive notice of that easement. *Arthur E. Selnick Assocs., Inc. v.*

---

(2) An instrument may not be recorded after June 30, 1981 unless it is legible and contains:
    (i) The parcel identifier;
    (ii) The county tax account number for the parcel, if any, and if it is different from the parcel identifier;
    (iii) The record legal description of the boundaries of the parcel;
    (iv) The street address of the parcel, if any;
    (v) The full name and address of each party to that instrument and the nature of the party's interest; and
    (vi) The name of any title insurer insuring the instrument.

*Howard Cnty., Md.*, 206 Md. App. 667, 703 (2012), *cert. denied*, 429 Md. 529 (2012) (citing *Columbia Hills Corp. v. Mercantile-Safe Deposit & Trust Co.*, 231 Md. 379, 381–82 (1963)). Mr. McClure's signature appears on several documents related to the settlement of Lot 7, all of which note the existence of a conservation easement. First, on the list that describes the documents he received from the listing broker, Mr. McClure acknowledges by signature the receipt of, among other documents, a copy of the Conservation Easement Agreement for Fairhill. Next, Item B in General Addendum I to his contract of sale states that conservation easements have been established on Lot 7 to preserve and protect the trees on the property. He acknowledged the FCE by signature on that document as well. In addition to those two documents, in Exhibit C to the contract of sale, there is depicted a diagram of the FCE on Lot 7, which Mr. McClure also acknowledged with his signature. We think all those documents are certainly demonstrative of actual notice.[5]

Notwithstanding Mr. McClure's assertions that he never received actual or constructive notice, we determine that not only did he receive actual notice, but also he received constructive notice. Unlike actual notice, where Mr. McClure would be directly aware of an encumbrance of his property, constructive notice exists where he would be "bound by every express encumbrance on his property which he could have found in the records, even if it [were] not in the direct chain of title." *USA Cartage Leasing, LLC v.*

---

[5] The deed to Lot 7 that Mr. McClure received two months after signing the contract of sale explicitly states his property is subject to "covenants, *easements* and restrictions of record." (emphasis added). We think this is cumulative to the notice he had already received from the attachments to the contract of sale.

*Baer*, 202 Md. App. 138, 177 n.12 (2011), *aff'd*, 429 Md. 199 (2012) (internal citation omitted) (internal quotation marks omitted). As discussed *supra*, the clerk of the circuit court certified in October 2005 that the Agreement and all of its attendant documents were recorded in the chain of title on the morning of March 13, 1998, and indexed in the Montgomery County land records against the Fairhill Partners, Mr. McClure's predecessors in title. Moreover, the circuit court aptly noted in its opinion that a diligent title search would certainly have uncovered the existence of the FCE, given that it was recorded just two years prior to Mr. McClure's purchase of Lot 7. We have previously explained that a reasonable title search will cover a sixty-year period. *See Coe v. Hays*, 105 Md. App. 778, 786 (1995). In fact, Mr. McClure's expert, Vince Berg, testified at the Board hearing that, albeit with great difficulty, he was able to successfully locate the easement in the land records. We think there existed substantial evidence in the record to support the Planning Board's finding that Mr. McClure had constructive notice of the FCE.

Mr. McClure cannot attack the validity of the easement for lack of actual or constructive notice, nor do his statutory arguments persuade us that the FCE was not recorded properly. Sections 3-101 and 3-501 each have different purposes and apply with equal force to the present case. We hold there was substantial evidence in the record to support the Planning Board's determination regarding the efficacy of the easement and Mr. McClure's notice of that easement.

*(ii) Accardi Doctrine*

14

Mr. McClure attacks the Planning Board's order on additional grounds, contending it is invalid due to the failure of the MNCPPC to re-plat all the lots encumbered by the FCE as required by the agency's own rules and the County Code. This, Mr. McClure contends, is a violation of the *Accardi* Doctrine. The Planning Board disagrees with Mr. McClure, arguing he did not preserve this issue for our review, and if we determine otherwise, that neither the agency's regulations nor the County Code required the re-platting of the existing lots in Fairhill. We agree with the Planning Board only to the extent that they did not violate the *Accardi* Doctrine.

We shall address initially the Planning Board's preservation argument. Mr. McClure has preserved this argument for our review. Our standard of review requires us to "review an adjudicatory agency decision solely on the grounds" the agency relied upon in making its determination. *Dep't of Health & Mental Hygiene v. Campbell*, 364 Md. 108, 123 (2001). Although Mr. McClure did not explicitly refer to the *Accardi* Doctrine before the Planning Board, he referred to its central principle—that an agency is generally required to observe the rules, regulations, and procedures it has established. *Pollock v. Patuxent Inst. Bd. of Review*, 374 Md. 463, 503 (2003) (adopting a modified version of the *Accardi* Doctrine in Maryland). Mr. McClure indeed raised this argument before the Planning Board, where he argued that a MNCPPC manual, the Trees Technical Manual, mandated that a forest conservation easement be shown on a plat in order to be effective. The Planning Board addressed this contention at length before it determined it was inapplicable to Mr. McClure's case. The circuit court also considered this argument and stated that it deferred to the Planning Board's interpretation of its statute and found no

15

error in the Board's determination the FCE was effective. Accordingly, we determine Mr. McClure did preserve this issue for our review and proceed to the merits of his contention.

An examination of Chapter 50 of the Montgomery County Code reveals that the Planning Board was never required to order Bozzuto to re-plat the approved Preliminary Plan 1-96071 to reflect the FCE. Chapter 50 sets forth the requirements for the subdivision of land in Montgomery County. A developer's general obligations with regard to FCEs may be found in Section 50-36. That section requires that a subdivision record plat include references to any existing easements, and must have sufficiently illustrated and described FCEs. Montgomery Cnty. Code § 50-36(c) & (d). The record plat must then be submitted to the Planning Board with an application for approval. *Id.* § 50-37. Additionally, all existing conservation easements that are applicable to the subdivision plan that created an outlot will apply to all lots converted from outlots. *See id.* § 50-35A(a)(2)(d). Further, a party may correct a plat using the minor subdivision procedure to reflect an existing easement. *Id.* § 50-35A(a)(5). The language in that corrective provision, however, is permissive—"A plat *may* be recorded under the minor subdivision procedure to correct inaccurate or incomplete information shown on a previously recorded subdivision plat." *Id.* (emphasis added). Notwithstanding these provisions for existing easements, our review of Chapter 50 reveals no provision or language that would impose a duty on the Planning Board to direct developers to re-plat all the Fairhill lots to indicate the presence of the FCE.

16

Furthermore, the Trees Technical Manual is not a document carrying the force of law that the Planning Board is required to follow. Our Court of Appeals has stated that in Maryland there exist "several different classes of administrative rules." *Comptroller of Treasury v. M.E. Rockhill, Inc.*, 205 Md. 226, 234 (1954). There are those rules that are legislative in nature and receive the force of law upon going into effect. *Id.*; *see also Sec'y, Dep't of Pub. Safety & Corr. Servs. v. Demby*, 390 Md. 580, 606 (2006) ("[A] substantive or legislative rule, pursuant to properly delegated authority, has the force of law, and creates new law or imposes new rights or duties." (internal citation omitted)). By contrast, an interpretive rule will interpret an agency statute to guide an agency in the performance of its duties, until the courts decide otherwise. *M.E. Rockhill, Inc.*, 205 Md. at 234; *Demby*, 390 Md. at 606 ("[I]nterpretative rules simply state what the administrative agency thinks the statute means, and *only* remind affected parties of *existing* duties." (emphasis added) (internal citations omitted) (internal quotation marks omitted)).

In the Code of Montgomery County Regulations ("COMCOR"), the Trees Technical Manual is defined as "a guidance document, adopted by the Planning Board, which provides further *clarification* of the requirements of Chapter 22A of the Montgomery County Code and these regulations." COMCOR 22A.00.01.15(B) (2014) (emphasis added). COMCOR, therefore, makes explicit that the Trees Technical Manual is intended to clarify and remind parties of their duties under Chapter 22A and its associated regulations. It is evident that the manual is not a new set of rules carrying with them the force of law, but a reminder to the citizens of Montgomery County of their

17

duties under the MCFCL. It follows, then, that the Planning Board cannot violate its own rules where the guidance document does not impose any new duties on the Board that carry the force of law.

We decline to hold that the Board violated the *Accardi* Doctrine where there are no duties imposed on it. Given that neither the Trees Technical Manual nor Chapter 50 of the County Code indicate that re-platting is required, we do not see where a duty exists that mandates the re-platting of a subdivision to reflect an FCE. We defer to the agency's interpretation of its statute to determine that re-platting is not necessary. *See Haigley v. Dep't of Health & Mental Hygiene*, 128 Md. App. 194, 216 (1999) (quoting *Balt. Gas & Elec. Co. v. Public Serv. Comm'n of Md.*, 305 Md. 145, 161–62 (1986)).

*(iii) Planning Board Jurisdiction and Authority to Enforce FCE*

In addition to attacking the underlying validity of the FCE, Mr. McClure also attacks the Planning Board's enforcement and remedial authority. Mr. McClure challenges the Board's authority to enforce a conservation easement recorded solely by deed, as well as contending the MCFCL does not permit the Board to issue sanctions for violations of an FCE nor can it order corrective actions. We do not agree.

The FCE maintains its validity notwithstanding Bozzuto's failure to re-plat the Fairhill subdivision to show the FCE. No language exists in either Chapter 22A of the County Code (the MCFCL) or, as explained *supra*, Chapter 50 that would require the Planning Board to direct a developer to re-plat a subdivision to indicate the existence of an FCE. The Planning Board was, therefore, not required to direct Bozzuto to re-plat and re-record the Fairhill subdivision plan in order to comply with the MCFCL. Furthermore,

18

the MCFCL's forest conservation plans requirements state that such a plan must include "legal instruments *such as* conservation agreements, *deed restrictions*, covenants, and other agreements, as necessary." Montgomery Cnty. Code § 22A-12(h)(2) (emphasis added). The language of the statute demonstrates that deed restrictions, such as an FCE by deed, is one of several methods by which a forest conservation plan may be advanced.

Moreover, Mr. McClure's argument that the Trees Technical Manual requires re-platting of a subdivision to show the FCE is inapt. The Trees Technical Manual is, as stated *supra*, a guidance document to assist developers in complying with the MCFCL. *See* Montgomery Cnty. Code § 22A-26(b) ("The technical manual must include *guidance* and methodologies . . . ." (emphasis added)). The definition of a conservation easement in the manual as a restriction recorded on a plat cannot be the sole method of compliance, particularly where § 22A-12(h)(2) states that deed restrictions and conservation agreements are additional permissible methods of delineating and enforcing an FCE. Because the MCFCL lists several other methods for showing the existence of an easement, and because we defer to an agency's interpretation of the statute it is charged with administering, we determine that the Planning Board is not required to mandate re-platting of a subdivision to denote an FCE.

Additionally, we think Mr. McClure's reading of the provisions of the MCFCL that set forth the Planning Board's enforcement authority is highly selective and belies the plain meaning of the statute.

Prior to its amendment in 2013, § 22A-16(d) stated that "[i]n addition to other remedies provided under this Article [III of Chapter 22A], a person who violates this

19

Chapter, any regulations adopted under it, a *forest conservation plan*, or any *associated agreements or restrictions* is liable for an administrative civil penalty imposed by the Planning Board." Montgomery Cnty. Code § 22A-16(d)(1) (2007) (emphasis added). This subsection explicitly mentions forest conservation plans *and* penalties in the same sentence. Moreover, it notes that a violator is liable for a civil penalty for "any *associated* agreements or restrictions." A dictionary definition of the adjective "associated" states that it modifies something "closely connected, joined, or united with another (as in interest, function, activity, or office)." WEBSTER'S 3D NEW INTERNATIONAL DICTIONARY 132 (1976). Taking this into consideration, we read § 22A-16(d) to state that an agreement or restriction, such as an easement, that is "closely connected" with a forest conservation plan can lead to penalties for its violation. The record plainly indicates a forest conservation plan existed for Lot 7, meaning that the statute was implicated by Mr. McClure's violations of the MCFCL.

Furthermore, the legislative intent of the Montgomery County Council may be divined from its 2013 amendment of the MCFCL. Subsequent legislative amendments of a statute, though not controlling as to the meaning of a prior law, may be helpful in determining legislative intent. *Chesek v. Jones*, 406 Md. 446, 462 (2008); *see also Johnson v. Mayor & City Council of Balt.*, 430 Md. 368, 389 (2013) (explaining that *Chesek* held that a subsequent clarifying amendment to a statute may be an acknowledgement of a power "*already in existence*." (emphasis added)). Indeed, the Montgomery County Council's amendment to § 22A-16 is very helpful in clarifying the Council's intent behind the enforcement authority of the Planning Board. In fact, the

20

preamble to the amending act explicitly states that the purpose of the amendment is to "clarify the enforcement authority of the Planning Board in the forest conservation law." To that end, the Council added the phrase "including any easement" after "any associated agreement or restriction" in the prior version of §22A-16(d)(1). We think this amendment is a clarion confirmation of the Planning Board's existing authority to impose penalties for violations of the FCE.

Similarly, § 22A-17 clearly imbues the Planning Board with the authority to issue an administrative order for violations of the MCFCL. The statute quite directly states that "[a]t any time, including during an enforcement action, the Planning Director *may issue an administrative order requiring the violator to take one or more of the following actions* within a certain time period specified by the Planning Director" and then goes on to list several remedial actions such as stopping the violation, restoring or reforesting unlawfully cleared areas, and even placing the forested or reforested land under a conservation easement. *See* Montgomery Cnty. Code § 22A-17(a)(1). Although we think this language quite clear, the aforementioned 2013 amendment went a step further and clarified the Planning Board's existing enforcement powers by adding additional language under § 22A-16(b) to state that "The Board's enforcement authority includes . . . ordering corrective actions . . . ordering compliance with corrective action orders[.]" Again, we are not persuaded by Mr. McClure's argument that the Planning Board lacked the authority to order certain remedial actions, especially in light of this clear statement of legislative intent.

We hold that the Planning Board possessed the statutory authority to impose an administrative civil penalty on Mr. McClure for his violations of the FCE and to issue a corrective order for compliance therewith. We determine the Planning Board's decision to hold Mr. McClure liable for his violations of the FCE was not arbitrary and capricious and was supported by substantial evidence.

> JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.